## Commonwealth v. Frengel

*Earl J. Schermerhorn*, for Commonwealth.
*Wayne S. Luce*, for defendant.

READER, P. J., April 9, 1941.—The above-stated case is before us on an appeal from a summary conviction. Defendant, Fred Frengel, was found guilty by Benjamin B. Bartle, a justice of the peace in and for Beaver County, of a violation of The Vehicle Code of May 1, 1929, P. L. 905, by reason of operating a truck upon a public highway with a gross weight in excess of that allowed by the code. The justice of the peace found defendant guilty and fined him $50 and costs. From this judgment the appeal was taken.

A hearing was had before the court and testimony was presented on behalf of the Commonwealth and of defendant. The evidence disclosed that on February 5, 1941, defendant was operating an International truck on Route

288 in Franklin Township, Beaver County, Pa. Defendant was a driver for P. & S. Coal Company, and at the time of his arrest was conveying a load of coal from the mine or tipple of the coal company to the place of business of Pennsylvania Power Company, in Lawrence County. An officer of the State Motor Police, R. E. Barry, being of the opinion that the truck and load were overweight, stopped the driver. It appearing that the driver was to deliver the coal to Pennsylvania Power Company, as above stated, the officer accompanied the driver of the truck to the place of business of the power company. This was a distance of about eight or ten miles from the place where the truck was stopped by the officer. The truck driver and an officer of the company for which he worked testified that the arrangement of the coal company with the Pennsylvania Power Company was that coal delivered to the latter was to be weighed upon its scales at its place of business, and was to be paid for upon the basis of the weight thus determined. The truck was driven to the place of business of the power company and was weighed upon its scales. It was found to have a gross weight of 31,000 pounds. There is no dispute of this fact, the driver agreeing with the officer as to the weight there determined. The truck was of the class "Y" as to which a gross weight of 25,000 pounds is allowed by section 903 of The Vehicle Code, as amended, 75 PS §453. The weight was therefore considerably more than 10 percent in excess of that allowed by the statute.

There can be no question that defendant, in operating his truck with this weight, was violating the statute. He testified that the truck and load were not weighed at the mine, or tipple, before he started to make delivery, and that he did not know what the weight was. The only suggestion of a defense is raised under section 904 of the code (75 PS §454), which provides that under such circumstances an officer may weigh the truck and load, either by means of portable or stationary scales, or may require that the vehicle be driven to the nearest stationary scales

in the event such scales are within a distance of two miles. The scales upon which the truck was weighed in this case were, as above stated, at the place of business of Pennsylvania Power Company, eight or ten miles from the place where the officer stopped the truck. We are satisfied, however, that defendant may not escape the penalty for violation of the statute because of the fact that the place where the weight was taken was more than two miles from the place of the arrest, or that the scales upon which the weight was taken were private and not public scales. We are inclined to the opinion stated by the court in the case of Commonwealth v. Davis, 19 D. & C. 513, that the provision as to the distance a driver may be taken to scales, for the purpose of weighing, is directory only. It is possible that if an officer were to require a driver to go more than the two miles he might refuse to do so. The provision is made to relieve the driver of hardship and serious inconvenience. It does not appear from the evidence that there was any public scale available nearer than the scales of the power company. There was a statement that public scales could be found in the Borough of Ellwood City. The officer, however, testified that these scales would weigh only to the extent of 18,000 pounds. Even if it were held that the driver was, in this case, taken an illegal distance, this would not justify us in rejecting the evidence actually obtained when the truck and load were weighed.

The instant case seems to us particularly clear in this respect in view of the fact that the driver, the defendant, was not taken out of his way at all. According to his testimony and that of Mr. Cunningham, he was going to the place of business of Pennsylvania Power Company for the purpose of delivering the coal there, and with the understanding that it should be weighed there and payment made according to weight thus determined. Defendant was taken or permitted to go where he had intended to go from the start. We think there is no question of his guilt under the provisions of the statute above referred to.

Counsel for the Commonwealth and defendant have requested us to state in our opinion our view as to whether defendant was also guilty of a violation of the statute requiring the driver of a truck conveying solid fuel to have in his possession a weight certificate issued by a licensed weighmaster. The statute involved is the Act of July 19, 1935, P. L. 1356. This question is not involved in the prosecution now before us.

It is suggested that the officer gave the driver a choice of being prosecuted for violation of this statute or of going to the scales of the Pennsylvania Power Company to determine whether he had violated The Vehicle Code in the respect above stated. We are satisfied, however, that there was no coercion practiced in this respect which would invalidate a conviction for operating an overweight truck. We express an opinion as to the effect of the Act of 1935, supra, with respect to defendant's conduct on the occasion in question simply at the request of counsel and with the understanding that we do not decide, and in this case cannot decide, the question thus presented.

In considering the construction to be given the Act of 1935, we have read the opinions of the Attorney General as found in Administration of Solid Fuel Sales Act, 37 D. & C. 491, and Vehicle Weight Certificates, 40 D. & C. 117. We find these opinions very instructive, and in the main we agree with the conclusions stated in them. We do not consider all the questions which they raise; we limit ourselves to the consideration of the question as to whether the driver of a truck transporting solid fuel must, from the inception of his trip, carry a weight certificate issued by a licensed weighmaster.

We think it is quite clear, as stated in the opinions of the Attorney General, that the act does not apply to the transportation of such fuel by a producer from his mine to his tipple, and that it does not apply where the fuel is being transported as a gift and not as the subject of a sale. Section 2 of the Act of 1935, 76 PS §343, provides that it shall be unlawful to sell solid fuels except by

weight, and provides, in substance, that no person shall sell or deliver, or start out for delivery, without having such solid fuel weighed by a licensed weighmaster.

Section 3 of the act, 76 PS §344, reads as follows:

"No person, upon the sale of solid fuel, shall deliver, or cause to be delivered, or to be started out for delivery, any solid fuel, without each lot, in each separate compartment of any vehicle or vehicle and trailer, being accompanied by a weight certificate, issued by a licensed weighmaster, on which shall be distinctly expressed:

"(a) In pounds, the weight, kind, and size of the solid fuel;

"(b) The name of the seller;

"(c) The name of the purchaser;

"(d) The license number of the vehicle; and

"(e) The signature of the licensed weighmaster by whom weighed.

"In all cases the weight certificate shall be delivered to the purchaser.

"When solid fuel is sold in lots of less than one hundred (100) pounds, the provisions of this section shall not apply if the solid fuel is delivered in closed containers or closed bags, and the net contents of such bag or container, expressed in pounds, is plainly stamped or printed thereon, or upon a tag securely attached thereto. This section shall not apply to the sale of a boatload or railroad carload of solid fuel delivered direct from the boat or car to one purchaser, and accepted as to weight by the purchaser on the bill of lading or other voucher issued by the carrier."

It seems to us that the answer to the question we are now considering is found in this section. It is true, as the Attorney General says, that the act is only to regulate the sale and delivery of such fuel. Section 3, however, expressly provides that no one shall make such sale or shall deliver, or cause to be delivered, or to be started out for delivery, any such fuel without it having been so weighed, and without his having a weight certificate. It seems to us clear that the intention of the act is that where such a

sale takes place, and delivery is to be made, the weight must be taken and the certificate furnished at the beginning of the act of transportation or delivery. This seems to be the express language of the section.

It seems to be further required by the provision that where such load consists of different lots in separate compartments of the vehicle the weight of each lot must be determined. In the case of Commonwealth v. Marchel, 35 D. & C. 162, Judge Schaeffer held, we think properly, that it was not sufficient to have one certificate showing the total weight of the various lots, but that there must be either a separate certificate for each lot, or one certificate showing separately the weight of each lot.

We think the construction of the statute we are stating is further required by the concluding provisions of section 3. It is here provided that where solid fuel is sold in lots of less than 100 pounds the act shall not apply if the solid fuel is delivered in closed containers, or closed bags, and the net contents of such bag or container are plainly stamped or printed thereon, or upon a tag securely attached thereto. All the provisions last referred to seem to us to contemplate that the weights shall be taken before the act of transportation is started. In any event, we think that this must be done, if the seller has no scales of his own, by having the weight taken and the certificate issued by the nearest available licensed weighmaster.

We are inclined to the opinion that one engaged in the business of so selling and delivering coal must provide for weighing the coal delivered at his own place of business, or in close proximity thereto. We think this view is further confirmed by the concluding sentence of section 3. In this case it is contemplated that the weight shall be determined by the purchaser of a boatload or railroad carload by the bill of lading issued by the carrier. It is true, in a general sense, as stated by the Attorney General, that the purpose of the statute is to protect purchasers of such fuel. The statute, in general, however, is intended to protect all purchasers throughout the Commonwealth, and

must be regarded as an exercise by the Commonwealth of its police powers. An effective enforcement of the statute seems to us to require that the loads be weighed and the certificates issued at the beginning of the act of transportation. Any other construction would seem to us to make enforcement impractical, by requiring the officers charged with enforcement to trace each load throughout its course to some possibly distant and inconvenient place for the purpose of taking weight.

We are of the opinion, for the reasons herein stated, that defendant violated the provisions of the Act of 1935, supra, in transporting a load of coal in his truck on the occasion in question without having a weight certificate. He would not be excused from having such certificate by a contract with the purchaser that the load was to be weighed at the purchaser's place of business and to be paid for on the basis of the weight there determined. To so hold would still further increase the difficulty of enforcement, by requiring the officers to follow such loads to the point of actual delivery no matter how far distant. It would render enforcement impractical, and sometimes impossible.

## Order

Now, to wit, April 9, 1941, it is hereby ordered, adjudged, and decreed that defendant, Fred Frengel, is adjudged guilty of having, on February 5, 1941, on a public highway in Beaver County, Pa., to wit, Route no. 288, unlawfully operated a commercial motor vehicle, class "Y", of the gross weight of 31,000 pounds contrary to the provisions of section 903 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §453, the gross weight permitted by said statute for such truck being 25,000 pounds, and the load carried with the truck exceeding the permitted weight by more than 10 percent; and said defendant is hereby sentenced to pay a fine of $50 and costs of prosecution, and in default of the payment thereof to undergo imprisonment in the Beaver County Jail for a period of 10 days.