## Commonwealth *v.* Berkery, Appellant.

Argued March 22, 1963. Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

628

reargument refused May 15, 1963.

*Benjamin R. Donolow,* with him *Paul D. Sulman,* for appellant.

*William D. Harris,* Assistant District Attorney, with him *John F. Hassett* and *Arlen Specter,* Assistant District Attorneys, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY WOODSIDE, J., April 18, 1963:

The appellant in this case was tried by a judge without a jury and found guilty of an attempt to commit burglary, possession of burglary tools, and conspiracy. The evidence of his guilt was overwhelming.

He seeks a new trial on the ground, among others, that "the trial judge sitting without a jury may well have been influenced by the fact that during the course of the trial, he became aware of the identity of the Defendant who had become the subject of great notoriety and publicity close to the time of the trial." During the examination of a Commonwealth's witness whose car was used by the defendant on the night of his arrest, the district attorney pleaded surprise and sought to cross-examine his witness concerning the car used to bring

her home that night. In the cross-examination, the district attorney wished to use a written statement made to him by the witness, but tried to limit the use to the single question concerning the automobile. The defendant's counsel objected, and thereafter the district attorney, the court and the defense counsel became involved in a prolonged colloquy. Finally, the court asked, "May I look at that statement?" Without objection the statement was handed to him. It contained some matters not relevant to the case—particularly about the co-defendant who was then deceased. The court, thereafter, indicated that he recognized the defendant as the person whose name had been linked with another pending criminal case receiving wide publicity.

The trial judge was the Honorable WILLIAM I. TROUTMAN of Northumberland County, specially presiding in Philadelphia. He is a judge of long experience and with an outstanding reputation for ability and integrity. If his acquired knowledge of the defendant's identity had the slightest influence upon his decision, he undoubtedly would have granted the defendant a new trial when the opportunity was presented to him.

When a judge is hearing a case without a jury, he should try to avoid receiving knowledge concerning the case and the parties which would be denied to a jury, but this is not always possible. In order to rule on the admission of evidence, a trial judge must sometimes obtain information he would not submit to a jury, and this is true when he is trying a case without a jury as well as when he is trying a case with a jury. Judges are human, but they are also specially trained to decide cases on the evidence. They are conscious of the dangers of irrelevant facts and zealously guard themselves against being influenced by any facts not obtained from the evidence. Furthermore, just as it is impossible in some notorious cases to obtain jurors who know noth-

ing of the defendant and the crime, so is it impossible for a judge to be free of all knowledge concerning notorious crimes and defendants. We are satisfied that the trial judge decided the case on the evidence, that he zealously protected the defendant's interests and that he was not prejudiced or influenced in his decision by the statement he read or the knowledge he obtained concerning the identity of the defendant.

The defendant asks us to arrest judgment, or in lieu thereof to grant him a new trial because of insufficiency of the evidence. As we stated at the outset, the evidence of the defendant's guilt, particularly on the attempted burglary conviction,[1] fully supported the verdicts.

The following extracts from the opinion of the court below adequately set forth the facts and dispose of these contentions: "The evidence produced by the Commonwealth in support of the indictments is to the effect that on June 12, 1959, at about 3:15 o'clock A.M., William T. Green, who lives at 2956 Rosehill Street, Philadelphia, Pennsylvania, and the rear of whose premises face the rear of the premises of the American Business Systems Company, heard footsteps on the cinders in the back of his house, and, looking out the bathroom window, saw a man walking toward the company fence along the railroad spur which led into the company yard. He observed two men carrying some kind of tools walking toward the gate. When they arrived at the gate one of the men broke the lock on the gate and both of the men entered, went over to the overhead door of the building which has been described as the north door, and tried to open it. He saw the movements of their bodies trying to pry the door open.

---

[1] Defendant was sentenced to 3 to 6 years on this charge. A sentence of 1½ to 3 years on the charge of possessing burglary tools runs concurrently with the attempted burglary sentence. Sentence on the conspiracy charge was suspended.

"Green went downstairs to his dining room and called the police and then went to the kitchen window where he could observe the two men in the yard. He heard the police car siren and saw the lights flashing. At that point, he observed the two men in the yard run alongside the fence and lie on the ground. He observed the policemen with flashlights around the premises and told them where the two men were. Green observed the police apprehend the two men who were identified as the defendant, Berkery, and Vincent Blaney.

"The rear of the premises of the American Business Systems Company is enclosed by what is known as a cyclone fence with a building erected along the west side of the premises with a loading platform. The railroad siding enters the yard and extends along the side of this building. As the siding enters the premises there is a double cyclone fence gate. Along the loading platform there are two overhead doors into the building, one described as the north door and the other described as the south door. On the morning in question, a box car was occupying the siding immediately in front of the south door but in no way obstructed the view of the north door.

"William Slack, a police officer, was familiar with the premises of the American Business Systems Company and at 2:00 o'clock A.M., on the morning of this incident had checked the front and rear end of the building after the place was closed up and found the chain lock on the gate secure. At approximately 3:30 o'clock A.M., he received a radio call that someone was attempting to break into the rear of the building and he immediately drove to the rear of the building in front of the gate. At about the same time, Michael J. Cole, a city police officer, drove into the rear of the premises. The police officers looked between the box car and the loading platform but saw no one there. At that time Green called to them that the men had run

toward the eastern fence and were lying along the fence. The police officers then went to the east side of the fence and found the two men lying on their stomachs. They took hold of them and stood them along the fence and a cold chisel and a pair of brown gloves were removed from a raincoat worn by the defendant, Berkery. Blaney was wearing a pair of brown leather gloves. A pinch bar, sledge hammer and a three-way flashlight were found on the ground where the defendants had been lying. Later the officers found the broken lock and chain near the gate.

"Upon investigation, a Chevrolet Convertible, silver-gray in color and having Florida license tags attached, was found in the vicinity. This was the same car that had been borrowed by the defendant and Blaney earlier that morning.

"Berry, a foreman for the company, testified that he left the premises at 2:00 o'clock on Friday morning, June 12, at which time there were no employees on the premises. He stated that he did not give permission to the defendant and Vincent Blaney to enter the premises and that the tools which were found in the yard were not company tools to his knowledge. Another employee, Jones, testified that he had locked the north and south overhead doors which are adjacent to the railroad siding the previous evening. This witness also testified that the tools found in the yard were not company tools. Another employee of the company, Henry, testified that he had locked the fence gate at 3:30 o'clock p.m., on June 11. He further stated that the gate had been brick brown in color and was painted with a silver paint several days before this occurrence. This witness also testified that he had never seen the tools which were found on the premises before.

"The defendant contends the evidence is not sufficient to sustain the verdict of guilty on any of the bills of indictment. A careful review of the entire record

in this case convinces us that there is sufficient testimony to sustain the verdict under each bill of indictment.

"In respect to Bill No. 1608 charging burglary, the trial judge refused to convict the defendant of burglary but found him guilty of an attempt to commit burglary. The Act of June 24, 1939, P. L. 872, Section 901, 18 P.S. 4901, defines burglary as follows: 'Whoever, at any time, wilfully and maliciously, enters any building with intent to commit any felony therein, is guilty of burglary.' Under the provisions of Section 1107 of the same Act, 18 P.S. 5107, it is provided that 'If, on the trial of any person charged with felony or misdemeanor, it shall appear to the jury upon the evidence, that the defendant did not complete the offense charged, but was guilty only of an attempt to commit the crime, he shall not by reason thereof be entitled to be acquitted, but the jury may return, as their verdict, that the defendant is not guilty of the felony or misdemeanor charged, but is guilty of an attempt to commit the same.'

" 'An attempt is an overt act done in pursuance of an intent to do a specific thing, tending to the end but falling short of complete accomplishment of it. In law, the definition must have this further qualification, that the overt act must be sufficiently proximate to the intended crime to form one of the natural series of acts which the intent requires for its full execution. So long as the acts are confined to preparation only, and can be abandoned before any transgression of the law or of others' rights, they are within the sphere of intent and do not amount to attempts.' Commonwealth v. Kelley, 162 Pa. Superior Ct. 526, 528.

"To make an intentional act an indictable attempt, it must go so far that it would result, or apparently result, in the actual commission of the crime it was designed to effect, if not extrinsically hindered or frus-

trated by extraneous circumstances. Commonwealth v. Willard, 179 Pa. Superior Ct. 368.

"In this case the Commonwealth proved that the defendant and Blaney forcefully entered the enclosure of the company by means of breaking a chain with a chisel and after gaining entrance proceeded to the north overhead door where they were seen in a stooping position at the door sill making a prying motion. When the police siren sounded and the light flashed on, they were seen running from that general direction and throwing themselves to the ground in order to conceal themselves from the police. A chisel and a pair of gloves were found in the raincoat pocket of the defendant and Blaney was wearing gloves at the time he was apprehended. The pinch bar, which they concealed by lying on top of it, was used to gain access to the company's premises. Under these circumstances, the facts and inferences deduced therefrom not only show an intent to unlawfully enter the premises of the company but there was an overt act in trying to gain access inside the building. The actual breaking and entry would have been accomplished had they not been interrupted. Consequently, there is sufficient evidence in this case to convict the defendant of an attempt to commit a burglary.

"In relation to Bill No. 1610 charging the offense of possession of burglary tools, there is sufficient evidence to sustain a verdict of guilty on that bill. Section 904 of the Act of June 24, 1939, P. L. 872, 18 P.S. 4904, provides that: 'Whoever has in his possession any tool, . . . jimmy, . . . or other mechanical device, designed or commonly used for breaking into any vault, . . . warehouse, store, shop, office, dwelling house, or door, shutter or window of a building of any kind, with the intent to use such tools or instruments for any of the felonious purposes aforesaid, is guilty of a misdemeanor.'

"The testimony in this case conclusively shows that the defendant and Blaney entered the fence enclosure by chiselling open a chain which secured the gate and that they were found lying upon a sledge hammer, pinch bar and flashlight and that the defendant had in his raincoat pocket a chisel and pair of gloves. There is competent testimony to show that these tools were not the property of the company and that they were brought into the enclosure by the defendant and Blaney. While the tools in question may be used for purely legitimate purposes, none the less they can likewise be used for gaining access to a building. As a matter of fact, in this case the pinch bar was used for the purpose of gaining access to these premises. The intent to use the tools for any of the felonious purposes set forth in the Act may be inferred from all the circumstances of the case. The circumstantial evidence is such as reasonably and naturally to justify an inference of the guilt of the defendant and is of such volume and quantity as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt. Commonwealth v. Clinton, 391 Pa. 212, 218.

"In relation to Bill No. 1609, charging conspiracy, we find sufficient evidence to sustain the verdict of guilty. The conspiracy may be inferentially established by showing relation, conduct or circumstances of the parties and evidence of overt acts on the part of co-conspirators is competent to prove that a corrupt confederation was in fact formed. Commonwealth v. Horvath, 187 Pa. Superior Ct. 206; Commonwealth v. Breslin, 194 Pa. Superior Ct. 83."

For the above reasons, the defendant's motions in arrest of judgment and for a new trial must be denied.

Judgments of sentences affirmed, and it is ordered that appellant appear in the court below at such time as he may there be called, and that he be by that court

committed until he has complied with his sentence or any part of it which had not been performed at the time the appeal was made a supersedeas.