392 A.2d 841

COMMONWEALTH of Pennsylvania

v.

Richard NEAL, Appellant.

Superior Court of Pennsylvania.

Submitted March 21, 1977.

Decided Oct. 20, 1978.

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Deborah E. Glass, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

On December 16, 1975, appellant Richard Neal was tried in Philadelphia Municipal Court and convicted of retail theft[1] and conspiracy.[2]  Sentences of eleven and a half months to five years imprisonment for retail theft and five years probation for criminal conspiracy were subsequently imposed.  An appeal was taken to the Court of Common Pleas where appellant waived a jury trial and on May 7, 1976, was again found guilty of the same two offenses. Post-trial motions were denied and appellant was sentenced to imprisonment for two and a half to five years on each conviction, with the sentences to run consecutively to each other and to a three to ten year term appellant was currently serving.  This appeal followed.

The Commonwealth adduced the following proof at trial. Mr. Anson Cooper, store detective at a Lit Brothers Department Store in Philadelphia, testified that on August 16, 1975, at about 12:30 p. m., appellant and a co-defendant, one William Wright, entered the store.  After looking at various items in the men's department, each man grabbed an armload of pants from a table and ran out the nearest exit to the street.  Outside the store, each man placed his load of

1.  18 Pa.C.S. § 3929.

2.  18 Pa.C.S. § 903.

merchandise in a shopping bag and they proceeded away from the scene. Mr. Cooper gave chase, and with the aid of a police detective, apprehended appellant and Wright within approximately five blocks. The twenty-nine pairs of stolen pants, which were recovered, had a retail value of $488. Appellant does not question the sufficiency of the evidence against him.

Appellant appeared for his trial de novo in the Court of Common Pleas in clothing issued by the State Correctional Institution at Graterford, purple pants and matching shirt with a number on the left side. Appellant moved to have the trial continued until he could obtain civilian clothes, but the court denied this motion, stating that "[w]hat clothes he is wearing or where he is currently residing will have absolutely no effect on this court's determination of the case." It is contended that requiring appellant to proceed to trial in prison garb deprived him of the presumption of innocence and constituted error requiring a new trial.

Appellant would have this court extend the principle recognized in *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976), where the United States Supreme Court stated that "the State cannot, consistent with the Fourteenth Amendment, compel an accused to stand trial *before a jury* while dressed in identifiable prison clothes . . . ." (Emphasis added). It is asserted that several decisions of this court require us to hold that trying a defendant in prison clothes before a judge sitting alone is also fatally prejudical. Cases such as *Commonwealth v. Fields*, 231 Pa.Super. 238, 331 A.2d 494 (1974), *Commonwealth v. Lockhart*, 227 Pa.Super. 503, 322 A.2d 707 (1974), and *Commonwealth v. Rivers*, 218 Pa.Super. 184, 279 A.2d 766 (1971), support the general proposition that the same principles of evidence, error and prejudice should be applied in both jury and non-jury trials. Decisions like *Commonwealth v. Mangan*, 220 Pa.Super. 54, 281 A.2d 666 (1971) and *Commonwealth v. Berkery*, 200 Pa.Super. 626, 190 A.2d 572 (1963), *allocatur refused*, 202 Pa.Super. ——, *cert. denied*, 375 U.S. 966, 84 S.Ct. 484, 11 L.Ed.2d 415 (1964), on the other

hand, recognize the special training and competence of the trial judge and grant him broader discretion as to the determination of his own objectivity in the face of improper exposure to prejudicial evidence. In *Commonwealth v. Conti*, 236 Pa.Super. 488, 345 A.2d 238 (1975), after reviewing both these lines of cases, the court states:

> "It is also plain, when cases like *Berkery* and *Mangan* are compared with cases like *Rivers,* that at least in Pennsylvania no fixed rule has been announced for determining when a trial judge will be regarded as having been able to maintain his impartiality after hearing incompetent evidence. We do not undertake to announce such a rule now. Instead, we shall continue to decide each case according to its particular facts. In so doing, however, we do explicitly recognize that two factors will be considered of critical import. One factor will be the inherently prejudicial quality of the specific evidence involved. . . . The other factor will be the importance of the evidence to the particular case. Suffice it to say that when, as in *Berkery,* the other evidence is overwhelming, we shall be less sensitive to the risk of harmful prejudice below." 236 Pa.Super. at 501, 345 A.2d at 245.

The evidence involved in the instant case, appellant's appearance for trial in prison clothing, while of a type which might greatly influence a jury, would not be likely to impair the objectivity of a trial judge. As we have previously noted, *Estelle v. Williams, supra,* focuses exclusively on the jury trial situation. No authority has been cited in specific support of appellant's argument for expansion of the *Williams* principle. In fact the only apparent case law on the point, recommended to us by the Commonwealth, is to the contrary. In *United States ex rel. Diamond v. Social Service Dept.,* 263 F.Supp. 971, 975 (E.D.Pa.1967), it is stated that: "This Court will not presume that any element of prejudice is present when a trial judge views a defendant in a prison uniform."

The second factor to be considered under *Commonwealth v. Conti, supra,* is the importance of the evidence to

which the judge was exposed in comparison to the strength of the Commonwealth's proof. Here the trial judge was not acquainted with inadmissible physical evidence, statements or confessions, but only became aware, because of the defendant's garb, of his present status, a fact which is obviously available to any trial judge and which had no direct evidentiary value to the Commonwealth's case. The evidence against appellant was comprised of an eyewitness to the crime who positively identified appellant as one of the thieves and personally apprehended him in possession of the merchandise minutes after the crime within five blocks of the scene. We have no difficulty in characterizing this evidence as "overwhelming". Because there was no prejudicial error in the trial court's refusal of appellant's motion for a continuance, appellant's first claim is without merit.

It is next asserted that the lower court abused its discretion in sentencing appellant to maximum consecutive terms on his two convictions. Appellant maintains that his sentence was excessive: (1) because the instant conviction and his prior record reflect only "street crime", i. e., crimes against property committed to support appellant's drug habit, and show no propensity for violence on his part; (2) because the lower court did not give sufficient consideration to committing appellant to a drug therapy or treatment program in lieu of formal confinement; and (3) because appellant's co-defendant was given a lighter sentence on charges stemming from the same occurrence.

"The sentence must be imposed for the minimum amount of confinement that is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. *See* 18 Pa.C.S. § 1321(b) (Supp.1975). At least two factors are crucial to such determination—the particular circumstances of the offense and the character of the defendant. Pa.R.Crim.P. 1403(a)(2) provides that all pre-sentence reports shall include such information." *Commonwealth v. Martin,* 466 Pa. 118, 133, 351 A.2d 650, 658 (1976).

The court in this case had the benefit of a full pre-sentence report, a psychiatric evaluation by a psychiatrist (M.D.), and a psychological evaluation. In addition, sentencing took place only after full argument of defense counsel. Appellant's psychiatric evaluation includes the following comments:

"Diagnostically, this man impresses me as an Antisocial Personality which is a diagnostic term applied to individuals who are basically sociopathic oriented, who have repeatedly been involved with the law and have failed to profit from these experiences. . . . The secondary diagnosis of Drug Dependency seems warranted based on his eight year history of drug abuse, primarily heroin, *for which he feels no need for treatment*." (Emphasis added).

As his recommendation, the psychiatrist states:

"Based on the available history and present clinical picture, there would seem to be no alternative, then, to recommending continued incarceration for this man followed by parole. The prognosis, however, given his present attitude, seems rather bleak, making prospects for improvement in his life-style rather bleak."

The psychiatric profile is similar in import and expresses a nearly identical outlook, "the prognosis for significant change appears poor."

Appellant's pre-sentence report revealed that he had six prior convictions resulting in commitment to the County Prison on three occasions. Further, appellant had been under the supervision of the probation department for the preceding six years and, during that period, had exhibited blatant disregard for the rules and regulations of probationary status, and had been in direct violation of various probations and paroles in six different instances. The pre-sentence investigator and appellant's probation officer concurred in evaluating appellant as unsuitable for a sentence of probation on the instant convictions. The investigator recommended a period of confinement followed by long term, strictly structured parole.

The court below not only availed itself of a pre-sentence report, but also gave consideration to two independent evaluations of appellant's psychological make-up and prospects. During the sentencing proceeding, which included argument by defense counsel, the court indicated that it would consider the nature of the crime in conjunction with the other information it had received about appellant in reaching a determination. Sentencing in this case thus clearly complied with the mandate of *Commonwealth v. Martin, supra.* Accepting, *arguendo,* appellant's contention that his record reflected only property crimes and showed no propensity for violence, appellant had six prior convictions and showed no signs of changing or wishing to change his life style. 18 Pa.C.S. § 1325 provides:

"The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:

(1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;

(2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

(3) a lesser sentence will depreciate the seriousness of the crime of the defendant."

Appellant has previously committed crimes while on probation and parole, and lenient sentences for prior criminal acts seem to have had no effect on his behavior.

█  It is also claimed that appellant's sentence should have included a drug treatment program. At appellant's original Municipal Court sentencing, however, he stated that he had not been an addict for two years, had used narcotics only "off and on" since that time, and had not indulged in such use for two months prior to the arrest which led to this conviction. Appellant's psychiatric report indicated that he had never sought treatment for his drug habit and felt no

need for treatment. Under such circumstances, where appellant maintained that he was long out of the stage of physical addiction and showed no desire for or motivation toward treatment, the court's disposition was not error.

Appellant's argument that a different court's more lenient sentencing of his co-defendant makes his sentence an abuse of discretion is likewise unpersuasive. *Commonwealth v. Hill,* 237 Pa.Super. 543, 353 A.2d 870 (1975), the principal case on which appellant relies, is inapposite to the instant facts. The co-defendants in *Hill* were sentenced by the same judge following a joint trial. Identical sentences were pronounced although one defendant had six prior convictions and the other only one. Here the court below was not required to consider and certainly had no obligation to be guided by the sentence a different court imposed on appellant's co-defendant. Any intimation to the contrary would contravene our philosophy of individualized sentencing.

The final claim presented in this appeal is that the lower court erred in pronouncing a more severe sentence after a trial de novo than had been imposed following appellant's conviction in Municipal Court. Although this precise issue was decided adversely to appellant's position in *Commonwealth v. Moore,* 226 Pa.Super. 58, 312 A.2d 422 (1973), *allocatur refused,* 227 Pa.Super. *xxvi* (1974), relying on *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), it is asserted that the supreme court's decision in *Commonwealth v. Harmon,* 469 Pa. 490, 366 A.2d 895 (1976), dictates a different result. In *Harmon,* it was held that the right to a "trial de novo" in the Court of Common Pleas following a Municipal Court conviction did not encompass the right to relitigate pre-trial motions, specifically motions to suppress. The fact that the term "trial" has been interpreted not to include pre-trial motions, however, has no effect on the basis of our holding in *Moore.*

The judgment of sentence of the lower court is affirmed.

SPAETH, J., files a dissenting opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

The majority states the issue as whether the trial judge could "[maintain] his own objectivity in the face of improper exposure to prejudicial evidence." Majority opinion at 843. If that were the issue, I should agree with the majority that this case is within the rule of *Commonwealth v. Conti*, 236 Pa.Super. 488, 345 A.2d 238 (1975). However, that is not the issue; appellant does not argue that the judge was exposed to evidence that he should not have been exposed to; indeed appellant could not so argue, for the judge did not hear any evidence he should not have heard. Instead, the issue is whether the judge should have started the trial at all. I think it plain that he should not have, but should instead have recused himself and sent the case to another court room, for trial before another judge.

When appellant appeared for trial in State prison clothing (purple pants and a matching shirt, with a number on it, N.T. 4), two facts were at once established: first, appellant had been convicted of a crime; he was not a detentioner, presumed innocent and in a county jail only because he could not raise bail; and second, the crime had been a bad one. With these facts established, it was the trial judge's duty to grant appellant's request that the case be continued for trial before another judge.[1]

1. The Commonwealth suggests in its brief, at 10, footnote 3, that the request was *only* for a continuance, "to obtain civilian clothing." The suggestion is disingenuous. Appellant's counsel said nothing about his client obtaining civilian clothing. Rather, counsel specifically based his request for a continuance on the grounds that his client's appearance in State prison clothes "has prejudicial implications to a finder of fact," N.T. 4–5; that to proceed to trial was "inherently unfair and prejudicial, and not only that, it is unbecoming to our system of justice in the United States," N.T. 6; and that, the trial judge having seen his client, the prejudice could not be waived but "still remains," N.T. 7. It is therefore clear that although counsel couched his request in terms of a "continuance" rather than "recusal", what he sought was trial before another judge. The trial judge understood this, for in denying the request he said that appellant's

This duty was established by *Commonwealth v. Goodman,* 454 Pa. 358, 311 A.2d 652 (1973). There a judge sitting without a jury convicted the defendant of unlawful possession of a narcotic drug. Before the trial there had been a suppression hearing, at which the judge had heard evidence that the defendant was a trafficker in narcotics. The defendant asked the judge to disqualify himself as trial judge, but the request was denied. In holding that the request "was proper and should have been honored," 454 Pa. at 362, 311 A.2d at 654, the Supreme Court said:

If it is established that the information received during the pre-trial proceeding would have been incompetent in the subsequent proceeding and that it was of a sufficiently inflammatory nature to arouse a prejudice against the defendant he need not demonstrate that the information actually influenced the court's actions. We are impressed with the wisdom of the ABA § 1.7 Standards Relating to the Function of the Trial Judge which provides: "The trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case *or whenever he believes his impartiality can be reasonably questioned.*" (Emphasis supplied). We have every confidence that the trial judges of this Commonwealth are sincere in their efforts to avoid consideration of incompetent inflammatory evidence in reaching their judgments but we also are acutely aware that the appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of either of these elements.[3] We are equally anxious to avoid the curtailment of the defense in the presentation of testimony in support of pre-trial motions because of the fear that information disclosed therein may adversely affect the outcome of subsequent proceedings. These considerations lead us to conclude that a judge should honor a request for recusation where prejudicial information is received in a pre-trial proceeding that

clothing would have "absolutely no effect on this Court's determination," N.T. 8.

would be otherwise inadmissible during the trial of the cause. 454 Pa. at 361–62, 311 A.2d at 654.

It is, of course, true that here the information received by the trial judge—that appellant was a State convict—was not received during a pre-trial suppression hearing, but that is of no moment; the Supreme Court did not confine its holding only to a suppression hearing but included any, and every, "pre-trial proceeding." Where, as here, a case is called for trial so that a colloquy may be conducted to determine whether the defendant will waive a jury, a "pre-trial proceeding" occurs.

Also of no moment is the fact, heavily relied upon by the majority, that here the evidence proved to be "overwhelming." Majority slip opinion at 4. That the evidence *would* be overwhelming could not be known until *after* the trial; the point of *Goodman* is that a trial should not *start* if *before it starts* the trial judge has received "information . . . that would be otherwise inadmissible during the trial . . . ." 454 Pa. at 362, 311 A.2d at 654. Here the trial judge did receive such information (the Commonwealth has neither shown nor even argued that evidence of appellant's prior conviction would have been within one of the exceptions to the general rule that evidence of a prior conviction is inadmissible).

Finally, the fact that the trial judge said he would not be influenced by his receipt of this information is of no consequence. In the first place, the Supreme Court held in *Goodman* that the judge " ' . . . should recuse himself whenever he has any doubt as to his ability to preside impartially . . . .' " 454 Pa. at 361, 311 A.2d at 654. If a judge knows that the defendant who stands before him is a State convict, and still does not have any doubt of his ability to preside impartially, he is over-estimating his abilities. Before the trial starts, the judge knows nothing of the evidence that will be offered. For all he knows, the evidence may present a most difficult issue of credibility, for example, a weak identification by only the victim against a most persuasive alibi defense. *No* judge can be sure *before*

*hearing any evidence* that his decision will not be affected by his knowledge that the defendant is a State convict. In the second place, the Supreme Court further held in *Goodman* that the trial should not start, *whatever* the judge's estimate of his ability to preside impartially, because "the appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of these elements." 454 Pa. at 361, 311 A.2d at 654 (footnote omitted). Here, the appearance of prejudice could hardly be more striking. I know of no case—except this one—in which we have countenanced an order requiring a defendant to stand trial in prison clothes. Appellant's counsel was entirely correct in his argument to the trial judge, that such a trial "is unbecoming to our system of justice in the United States."[2] The trial was unbecoming not only because anyone observing it would wonder whether the judge would be able to preside impartially. It was also unbecoming because of the unnecessary, and purposeless, humiliation inflicted upon appellant. Thus in *Commonwealth v. Keller,* 216 Pa.Super. 193, 197–98, 264 A.2d 407, 409–10 (1970), Judge HOFFMAN said, for a plurality of this court:

> The wearing of prison garb in the courtroom also demeans the defendant in his own mind. It makes him feel that, although presumed to be innocent, he has already lost his dignity by the very fact of arrest and charge. It separates him from the ordinary defendant who may appear in his best "Sunday suit" and fittings. The defendant is thereby placed in a psychological, emotional disadvantage.
>
> This consideration has been recognized by the Colorado Supreme Court. In *Eddy v. People,* 115 Colo. 488, 174 P.2d 717 (1946), the court reviewed the conviction of a defendant who was required to appear in the courtroom attired in his prison uniform with the words "County Jail" lettered thereon. In reversing, the court said: "We believe the mind of a prisoner would be as much disturbed

**2.** See footnote 1, *supra.*

and his mental faculties as much confused and embarrassed by carrying on his person such brand of incarceration [the uniform bearing the words 'County Jail'], as here required, as by physical shackles, and that a prejudice against a prisoner might equally well be created thereby in the minds of the jurors. It is difficult to find any distinction, as to the humiliation involved, between requiring a prisoner to wear the words 'County Jail' branded upon his clothing and requiring him to wear them on a placard attached about his neck; either is a mockery, an indignity and a humiliation not consonant with innocence and freedom. The presumption of innocence requires the garb of innocence, and regardless of the ultimate outcome, or the evidence awaiting presentation, every defendant is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man, except as the necessary safeguard and decorum of the court may otherwise require." 174 P.2d at 718–719. See also *Commonwealth v. Reid,* 123 Pa.Super. 459, 467–468, 187 A. 263 (1936).

The judgment of sentence should be reversed and a new trial ordered.