462 A.2d 699

**COMMONWEALTH of Pennsylvania**

v.

**Joseph A. NUGENT, Appellant.**

Superior Court of Pennsylvania.

Argued March 22, 1983.

Filed June 10, 1983.

David Weinstein, Philadelphia, for appellant.

August T. Groover, Assistant District Attorney, Media, for Commonwealth, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

HESTER, Judge:

On April 4, 1979, appellant, Joseph A. Nugent, was operating a six-axle crane in Darby Borough, Delaware County, Pennsylvania. Officers Mower, Terra and Blythe, of the Borough of Darby Police Department, observed the crane moving along Shelbourne Road, Wycombe Avenue and, finally, MacDade Boulevard, where they stopped it for apparent size and weight violations. When appellant presented an expired permit authorizing the operation of the oversized and overweight vehicle, the officers ordered him to drive one mile farther to a Pantry Pride parking lot for the purpose of weighing the crane with portable scales.

Each of the six axles was weighed individually by a portable scale placed under each tire. The combined weight of the six axles reflected a gross vehicle weight of 175,160 pounds; therefore, the vehicle was 101,880 pounds in excess of the legal maximum weight of 73,280 pounds for vehicles operating upon Pennsylvania highways.[1]

Appellant was thereafter taken to District Justice Thomas J. Lacey's office and required to post $29,400.00 as bond before the crane could be released. A summary offense hearing was subsequently conducted by District Justice Lacey; appellant was adjudged guilty of violating the maximum gross weight provision of the Vehicle Code and ordered to pay $29,400.00 as a fine. A trial de novo before the Court of Common Pleas of Delaware County resulted in the same verdict and identical fine. This appeal was promptly taken from the judgment of sentence.

1. Vehicle Code, June 17, 1976, P.L. 162, No. 81, eff. July 1, 1977, 75 Pa.C.S.A. § 4941(a).

■ Appellant argues first that the entire weighing procedure was improperly conducted because neither Officer Mower nor Officer Terra was qualified to weigh the crane, and the multiple draft weighing process was not authorized by statute. Section 4981(a) of the Vehicle Code provides that ".... measurement and weighing shall be conducted by qualified personnel who have been trained in the use of weighing and measuring equipment in a training program approved by the Department of Agriculture." 75 Pa.C.S.A. § 4981(a). According to appellant, Officer Terra was not certified at the time of the accident; Officer Mower admitted unfamiliarity with the Public Weighmaster's Act [2]; and, complete testimony indicated Terra alone was in charge.

Appellant's recollection of testimony is erroneous. At the time of arrest, Officer Mower was a sergeant for the Borough of Darby Police Department. He received instruction for law enforcement purposes from both the Pennsylvania State Police and the Pennsylvania Department of Agriculture in the particular multiple draft weighing employed in this case. N.T., August 13, 1972, p. 13. It is not material that Mower, or the two attending officers, were unfamiliar with the Public Weighmaster's Act. Section 4981 makes no specific reference to the Act; it simply requires training and certification following participation in a program conducted by the Department of Agriculture. Officer Mower testified to his certification and presented to the Court his certification card, later admitted as evidence. N.T. pp. 6 and 7.

We agree with appellant that Officer Terra was not qualified to properly administer the multiple draft weighing process; however, this deficiency was not fatal to the validity of the weighing procedure so employed. Officer Terra was not in charge of the weighing procedure; he was in charge of the three-man team that surveyed the crane's movement, detained appellant and transported appellant to the magistrate's office. The actual weighing was simply a

2. Public Weighmaster's Act, April 28, 1961, P.L. 135, 73 P.S. § 1771, et seq.

segment of the team's activities and the evidence demonstrated that Officer Terra yielded to the expertise of both Mower and Blythe when the multiple draft weighing began. Officer Terra did nothing more than record numbers as Officers Mower and Blythe read them aloud from the scales. N.T., p. 31. We are aware of no statutory or judicial authority which requires that more than one certified officer administer the weighing process or which would prohibit the guided assistance of non-certified officers. See *Commonwealth v. Michael,* 301 Pa.Super. 92, 446 A.2d 1350 (1982).

■ With respect to the alleged improper weighing procedure employed here, appellant maintains that multiple draft weighing is not authorized by statute. As statutory support for his position, appellant cites the Public Weighmaster's Act.

A licensed public weighmaster shall not use any scale to weigh a load which exceeds the normal or rated capacity of the scale.

73 P.S. § 1783.

According to appellant, this section clearly, albeit impliedly, authorizes only the weighing of a single object on one scale. Appellant recognizes the propriety of multiple draft weighing for severable tractor-trailer units; however, he argues that such weighing receives no legislative or judicial sanction for single unit vehicles such as cranes.

We disagree. We interpret § 1783 of the Public Weighmaster's Act as prohibiting the use of any scale or scales, the *total* weight capacity of which cannot tolerate the vehicle's gross weight; hence, the total weight capacity can be reached by either a single unit scale or the combined readings from multiple, portable scales.

Admittedly, this interpretation does not promote a finding of compliance with § 1783 of the Public Weighmaster's Act, were it applied. The Darby Borough officers engaged six portable scales to record that portion of the crane's weight distributed over each of the 12 wheels. The scales had an

individual capacity of 20,000 pounds and five of the twelve wheels registered a weight of 20,000 pounds. Officer Mower acknowledged that those particular portions of the axles exceeded 20,000 pounds; the scales had reached capacity and could not register the true weight. We do not consider § 1783 of the Public Weighmaster's Act, however. Officer Mower was not a licensed public weighmaster; he was simply certified by the Bureau of Public Weights and Measures to weigh vehicles for *law enforcement* purposes. As such, he was not subject to the provisions of the Public Weighmaster's Act.

Portable scales for multiple draft weighing are employed with statutory authority. 75 Pa.C.S.A. § 4981(a); 75 Pa.C. S.A. § 4981(c); *Commonwealth v. Pierce,* 88 Montg. 368 (1967). In recognition of a possible variance between platform and multiple weighing devices, a one percent tolerance is considered when computing the total gross weight. 75 Pa.C.S.A. § 4981(c). Consequently, the differential does not forbid, as appellant asserts, the use of multiple draft weighing. Moreover, we are not impressed with appellant's courtroom experiment with a postal scale and model crane to demonstrate the inaccuracy of multiple draft weighing. There was no certification presented by appellant of the postal scale's accuracy; the portion of the model crane resting on the scale was raised to a far greater proportionate height than the actual crane held in violation here.[3] We must defer to the judgment of the legislature in authorizing multiple draft weighing. Appellant simply does not demonstrate, with complete and convincing scientific evidence, that the legislature erred in accepting the accuracy of multiple draft weighing.

■ Next, appellant avers that Sergeant Donald Franklin, of the Chester Police Department, was not qualified to testify as the prosecution's expert witness. Sergeant Franklin was certified by both the Department of Agricul-

---

3. Portable scales employed by Officers Mower, Blythe and Terra were only 2.9 inches above the asphalt surface of the parking lot. The crane was driven up slight inclines to rest on the scales.

ture and the Pennsylvania State Police in the weighing and measuring of motor vehicles; he served two to three years as an instructor of weighing and measuring with the Pennsylvania State Police; and, he had testified as an expert in approximately 3,000 truck weighing cases in the Court of Common Pleas of Delaware County. N.T. pp. 49–50. Appellant chose not to cross-examine Sergeant Franklin on his qualifications; instead, he attempted to demonstrate the Sergeant's ignorance of weighing principles of alleged common knowledge. For instance, appellant derided Franklin for opining that postal scales could only weigh letters accurately, not model trucks; for admitting that he was neither a weighmaster nor experienced in weighing cranes; and, for opining that the principles of weighing real trucks and toy trucks were different. Appellant distorts the issue with sophistry. Sergeant Franklin received extensive instruction, was an instructor and was obviously familiar with the litigated issues arising from weighing of motor vehicles. This much was clear and unchallenged. It was also sufficient in itself to qualify him as an expert. We attribute no significance to his ignorance of postal scales and toy trucks. Further, we are not impressed with his lack of experience in weighing cranes. The Vehicle Code addresses itself to the weighing devices for *all* motor vehicles, whether they be automobiles, pick-up trucks, tractor-trailer units or cranes. The weighing principles and processes remain identical; experience with weighing one carries over to weighing of another. Finally, a police officer can be certified to weigh vehicles without knowledge of the law of physics. A certified operator of weighing devices need understand the importance of accurate scales, the correct weighing methodology to employ and the precise reading of the registered scales. Sergeant Franklin was equipped with this knowledge. The Department of Transportation, in conjunction with the Department of Agriculture, certifies law enforcers, not physicists.

■ Further, we do not believe appellant was prejudiced when the Court made the following comment on appellant's

attack of Sergeant Franklin's qualifications: "Mr. Weinstein doesn't know Sergeant Franklin as we do." N.T. p. 49. We note first that there was no jury present which could have placed undue emphasis upon the court's apparent belief. We must recognize the trial judge's complete training and experience in non-jury trials, and allow him broader objectivity even where he expresses premature beliefs. See *Commonwealth v. Neal,* 258 Pa.Super. 375, 392 A.2d 841 (1978), later proceeding 493 Pa. 335, 426 A.2d 576 (1981); *Commonwealth v. Conti,* 236 Pa.Super. 488, 345 A.2d 238 (1975). Secondly, and most importantly, additional qualifications were elicited which established Sergeant Franklin's expert status.

■ Appellant also contends that he was confronted with an emergency while moving the crane; therefore, he was excused from possessing a written permit on April 4, 1979. Section 4964 of the Motor Vehicle Code [4] allows the suspension of written authorization and the use of oral authorization for the movement of an overweight vehicle, providing an emergency affecting the public safety exists, and providing a written permit is applied for within 72 hours of movement. Appellant maintains that his employer, Markim Incorporated, was the only supplier of cranes for the movement of containment vessels storing contaminated water from the Three Mile Island facility. Furthermore, appellant maintains that his employer was given oral permission by the Department of Transportation to operate and move *all* its cranes in order to contribute to the clean-up of Three Mile Island. Finally, he alleges that a written permit was applied for within 72 hours of movement of the crane.

Officer Terra testified that, at the time he stopped the crane, appellant informed him that he was driving to Sun Oil in Marcus Hook, Pennsylvania; Three Mile Island was never mentioned. N.T. p. 33. Verbal permission to move the crane was not given until six hours following the detention and weighing. William A. Eason, a District Permits Engineer for the Department of Transportation, pro-

4. 75 Pa.C.S.A. § 4964.

vided the court with a list of all permits issued to appellant's employer in March and April, 1979. None of these permits authorized the movement of any of Markim's overweight cranes from Darby Borough to any part of the Commonwealth. Obviously, then, no permit was applied for within the required 72 hour period. We can find no authority for the transport of the particular crane involved in this appeal from the fact that Markim had permission to move its other cranes. Oral permission for the movement of *other* cranes is not sufficient; the particular crane at issue must receive its own permit.

We agree with appellant to the extent that the lower court limited the written permit exception to emergencies within Delaware County. Appellant is correct inasmuch as he could qualify for oral authorization to move his crane to alleviate an emergency situation *outside* Delaware County; nevertheless, appellant has not proven that this particular crane was actually en route to Three Mile Island or that it had received either oral or written authorization. As alluded to above, appellant admitted, at the time he was detained on MacDade Boulevard, that he was en route to Marcus Hook, Pennsylvania, a town in the southeastern corner of the Commonwealth.

■ Appellant also challenges the constitutionality of the fine provision for the movement or operation of overweight vehicles. Insofar as the fine provisions are designed to discourage the overloading of cargo for additional profit,[5] they are unjustly applied, according to appellant, to crane vehicles which cannot carry cargo. We disagree with appellant's narrow interpretation of the policy reasons for the imposition of heavy fines. The fine provisions were also designed to protect the physical composition of highways and to assure the safety of traveling motorists. *Commonwealth v. Frengel*, 41 Pa. D. & C. 551 (1941). Certainly, the

---

**5.** Prior to amendment of the fine provisions, *Commonwealth v. Tirpak*, 271 Pa.Super. 357, 413 A.2d 705 (1979), operators could surpass the amount of the fine with the additional fee from an overload; hence, there was little or no deterrence to the operation of overweight vehicles.

operation of an overweight crane poses a similarly high risk to the construction of highways and the welfare of travelers.

Nor do we agree that appellant's violation can be excused because his was not a flagrant, intentional or bad faith disregard of the law. Appellant calls our attention to his employer's routine practice of securing permits for its oversized and overweight vehicles; he also emphasizes the obtaining of a permit for the crane that was actually earmarked for the Three Mile Island clean-up, until it was disabled as the result of mechanical deficiencies.

Criminal intent or moral wrongdoing are not indispensable elements to the commission of all crimes. Some statutory crimes are designed to give criminal treatment to wrongs that are actually more civil in nature because criminal procedure can more effectively provide redress. In fact, intent and moral depravity are not composite requirements of the Commonwealth's burden of proof in motor vehicle cases. *Commonwealth v. Hennemuth*, 294 Pa.Super. 360, 439 A.2d 1241 (1981). We are concerned solely with the existence of a permit for the particular crane in question; appellant's compliance with the law in the operation of his other vehicles is simply not deserving of judicial attention. We lack judicial discretion to soften the application of the overweight provisions of the Vehicle Code simply because appellant is law-abiding in other respects. *Commonwealth v. Smith*, 409 Pa. 521, 187 A.2d 267 (1963); *Commonwealth v. Burall*, 146 Pa.Super. 525, 22 A.2d 619 (1941).

Appellant's reliance on *Commonwealth v. Thomas*, 53 Pa.D. & C.2d 657, 21 Bucks 349 (1971), and *Commonwealth v. Wiggins*, 18 Bucks 554 (1968), is misplaced. In both opinions, the failure to obtain a permit was the result of clerical error; there had been an all-out effort to comply with the law. In *Thomas*, the defendant's employer made application for a permit to operate the overweight tractor-trailer unit involved; however, he inadvertently gave a license number applying to another tractor of identical year,

make and model. In *Wiggins*, the defendant secured a permit for the vehicle in question authorizing a load substantially less than the actual load. The defendant made application in a cursory fashion thereby causing an erroneous recitation of the rig's weight. In both *Thomas* and *Wiggins*, there was an attempt to apply for a permit for the actual rig there involved; the violation was the result of clerical errors in the application process. The *Thomas* and *Wiggins* courts reversed the convictions because neither defendant attempted to evade the statutory provision; they had made affirmative attempts to comply, albeit ineffectively. In the instant matter, appellant made no application for this particular crane.

■ It is appellant's next contention that the lower court erred in excluding as hearsay the testimony of Markim's president to the extent that Markim received oral permission to operate its cranes so long as the Three Mile Island emergency existed. According to appellant, this was not hearsay since it was not offered as the truth of the matter asserted; rather, it was offered as evidence of what Markim's president heard and why he believed the transport of the overweight crane was lawful. Once again, appellant employs specious reasoning. If the issue were whether Markim's president heard any statement, then the alleged oral statement offered would not be hearsay because the matter asserted would be unimportant. That is hardly the case here. The issue is what *specifically* did Markim's president hear. According to appellant himself, he received oral permission from the Department of Transportation to operate *all* its vehicles. That is the truth of a particular matter asserted in the alleged statement; no clearer example of hearsay can be concocted.

In further attempts to strengthen his non-hearsay argument, appellant notes the lower court's admission of Markim's reiteration of its receipt of oral permission to operate its cranes; therefore, the lower court erred in disregarding such evidence and concluding no such oral permission was given. As fact-finder, the court was entitled to evaluate the

integrity and credibility of Markim's president. Obviously, the court placed more credence in the testimony of the Department of Transportation's permit manager who was not aware of any blanket oral permission issued to Markim's fleet of motor vehicles. See *Robinson v. Robinson*, 183 Pa.Super. 574, 133 A.2d 259 (1957); *Bobst v. Bobst*, 357 Pa. 441, 54 A.2d 898 (1947). This entire hearsay issue is, nevertheless, rendered moot by the Commonwealth's affirmative evidence, and appellant's failure to offer refutation thereof, of the absence of an application for a written permit within 72 hours of the crane's movement.

Finally, appellant contends that the fine was incorrectly computed. Section 4945 of the Vehicle Code provides for a fine of $75.00 plus $75.00 for each 500 pounds in excess of 3,000 pounds over the permitted maximum gross weight. Moreover, where the gross weight of the vehicle exceeds 73,280 pounds, the fine is doubled "for other weight violations". The lower court computed the fine as follows:

| | | |
|---|---|---|
| 175,160 pounds | – | crane's gross weight |
| 73,280 pounds | – | statutory maximum |
| 101,880 pounds | – | gross overweight |
| | | |
| 1,752 pounds | – | 1% statutory allowance |
| 3,000 pounds | – | § 4945(a) base |
| 4,752 pounds | – | defendant's credit |
| | | |
| 101,880 pounds | – | gross overweight |
| 4,752 pounds | – | defendant's credit |
| 97,128 pounds | – | net overweight |
| | | |
| 97,128 pounds | – | net overweight |
| ÷ 500 pounds | – | units per § 4945(a) |
| 195 units | – | 500-pound units (194.256 rounded) [6] |
| | | |
| 195 | – | 500 pound units |
| x $75.00 | | |
| $14,625.00 | – | fine on 500-pound units in excess of 3,000 pounds over maximum gross weight allowed |

6. 194.256 is rounded to the higher full number; a violator must pay "$75.00 for each 500 pounds, *or part thereof,* in excess of 3,000 pounds over the maximum or registered gross weight allowed." 75 Pa.C.S.A. § 4945.

$14,625.00 — fine on 500-pound units
75.00 — base fine
$14,700.00

$14,700.00
x 2 — per § 4945(a)
$29,400.00
10.00 — costs
$29,410.00 — total fine

Appellant maintains that the two-fold increase of the $14,-700.00 attributed to the 500 pound units was not properly applied here. According to appellant, such doubling is permissible only where fines are calculated according to axle weight or wheel weight violations. Appellant's position here is predicated upon the statutory language directing the doubling of the fine "for *other* weight violations." 75 Pa.C.S.A. § 4945(a). Since the phrase is included within the gross weight violation provision, instead of the axle weight and wheel weight violation provisions, appellant reasons that "other" refers only to the latter two types of weight violations.

We are constrained to disagree. There is no logical basis for doubling the fine for wheel and axle weight violations and not for gross weight violations. The entire vehicle, axle and wheels are assigned their own maximum weight allowances and their minimum fine and fine per unit with due regard given their individual weight bearing capacity. It is not necessarily true that any type violation is likely to bring a heavier fine than the others; therefore, the doubling of the fine is more properly applied to all three violations.

Judgment of sentence affirmed.

POPOVICH, J., files a concurring and dissenting opinion.

POPOVICH, Judge, concurring and dissenting:

I concur with the majority's disposition of all but one of the issues presented on this appeal. I respectfully dissent

from the Opinion of the majority insofar as it holds that the fine imposed was properly computed.

At the time the instant violation occurred, § 4945 of the Vehicle Code provided as follows:

### § 4945. Penalties for exceeding maximum weights

(a) **Gross weight violations.**—Any person operating a vehicle or combination upon a highway exceeding the maximum gross weight allowed by section 4941 (relating to maximum gross weight of vehicles) or the registered gross weight allowed by section 4942 (relating to registered gross weight), whichever is less, is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $75 plus $75 for each 500 pounds, or part thereof, in excess of 3,000 pounds over the maximum or registered gross weight allowed. If the gross weight of any vehicle or combination exceeds 73,280 pounds, *the fine shall be double the amount for other weight violations.*

(b) **Axle weight violation.**—Subject to the provisions of section 4982(c) (relating to reducing or readjusting loads of vehicles), any person operating a vehicle or combination with a weight on an axle or pair of axles exceeding the maximum axle weights allowed by section 4943 (relating to maximum axle weight of vehicles) is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $100 plus $100 for each 500 pounds, or part thereof, in excess of 2,000 pounds over the maximum axle weight allowed.

(c) **Wheel weight violation.**—Any person operating a vehicle or combination upon a highway exceeding the maximum wheel weight allowed by section 4944 (relating to maximum wheel load) is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $100 plus $100 for each 200 pounds, or part thereof, in excess of 200 pounds over the maximum wheel weight allowed.

(d) **Concurrent violations.**—In any case in which there are concurrent violations of more than one of the sections

or subsections of this subchapter prescribing maximum weights, the only penalty imposed shall be for violation of that section or subsection which produces the greatest fine.

(Emphasis added). 75 Pa.C.S.A. § 4945.

The gross weight violations section, 75 Pa.C.S. § 4945(a), has been amended since the time of the infraction in the present case. The current statute provides:

**(a) Gross weight violations.—**[1]

(1) Any person driving a vehicle or combination upon a highway exceeding the maximum gross weight allowed by section 4941 (relating to maximum gross weight of vehicles) or the registered gross weight allowed by section 4942 (relating to registered gross weight), whichever is less, is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $75 plus $75 for each 500 pounds, or part thereof, in excess of 3,000 pounds over the maximum gross weight or the registered gross weight.

(2) If the gross weight of any vehicle or combination exceeds the applicable gross weight allowed under section 4941(a), the fine imposed under this subsection shall be doubled.

The obvious revision is the deletion of the last sentence of old § 4945(a) and its replacement with sub-section (2), which directs that the penalty prescribed by sub-section (1) shall be doubled when the vehicle's gross weight exceeds the gross weight allowed under § 4941(a). The maximum vehicle gross weight under § 4941(a) is 73,280 pounds. The statute apparently provides that if a vehicle is in excess of its registered gross weight but not the maximum gross weight, the fine is not doubled.

Appellant contends that since the phrase in old § 4945(a), "for other weight violations," is included within the gross weight violation provisions, the word "other" must refer to axle weight and wheel weight violations, §§ 4945(b), (c).

1. Amended June 18, 1980, P.L. 229, No. 68, § 5, 75 Pa.C.S.A. § 4945(a).

The majority holds that there is no logical basis for doubling the fine for wheel and axle weight violations and not for gross weight violations. I disagree with the majority on this point. Since the statute in question is a penal statute, it is subject to the rule of strict construction. 1 Pa.C.S.A. § 1928(b). "Words and phrases shall be construed according to rules of grammar and according to their common and approved useage ...." 1 Pa.C.S.A. § 1903(a). I interpret the phrase, "the fine shall be double the amount for other weight violations," as calling for a double penalty for violations of wheel and axle weights when the gross weight of the vehicle exceeds 73,280 pounds. Such an interpretation is not illogical if one considers that it is possible to have a wheel weight or axle weight violation without a gross weight violation. This possibility was articulated in *Commonwealth v. Cunningham*, 365 Pa. 68, 73 A.2d 705 (1950), where our Supreme Court had occasion to interpret an older version of the statute in question. The Court stated:

> Under section 903(g) of the Vehicle Code a person who operates on a highway a combination of a truck tractor and semi-trailer violates the statute if the weight on any axle is in excess of 20,000 pounds; he also is guilty of a separate violation of the statute if the gross weight of the combined vehicles and their loads is in excess of 45,000 pounds. A violation of the provision in regard to the weight on an axle does not constitute a violation of the gross weight, and, vice versa, a violation in regard to the gross weight does not necessarily involve a violation in regard to the weight on any of the axles because the overall weight may be excessive but may be so distributed as not to overload the individual axles. [T]herefore, section 903(g) covers separate and distinct offenses ....

*Id.*, 365 Pa. at 70, 73 A.2d at 706. In those cases where the gross weight of the vehicle is within statutory maximums, a double penalty cannot be imposed even though there may be axle weight and wheel weight violations.

If the amended statute was applicable to the instant case, the penalty assessed would have been correct. However,

although we might prefer the result required by the new statute, it cannot be applied retroactively. 1 Pa.C.S.A. § 1953 [2]; *Commonwealth v. Hoetzel,* 284 Pa.Super. 623, 630, 426 A.2d 669, 672 (1981). The majority's interpretation of the statute ignores the plain meaning of the phrase, "for other weight violations." The phrase fits logically into the scheme of the penalty provision. An argument that the subsequent substantial revision of the statute has simply clarified the original intent of the legislature would have us ignore the common usage of the words of the statute and our obligation to follow the rule of strict construction of penal statutes.

The fine imposed was improperly calculated. I would amend the sentence accordingly.

---

**2.** Section 1953, entitled "Construction of amendatory statute," provides:

Whenever a section or part of a statute is amended, the amendment shall be construed as merging into the original statute, become a part thereof, and replace the part amended, and the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time; but the portions of the statute which were not altered by the amendment shall be construed as effective from the time of their original enactment, and the new provisions shall be construed as effective only from the date when the amendment became effective.

1 Pa.C.S.A. § 1953.