415 A.2d 890

COMMONWEALTH of Pennsylvania

v.

Lionel WALLS, Appellant.

COMMONWEALTH of Pennsylvania

v.

Maxine WALLS, Appellant.

Superior Court of Pennsylvania.

Argued April 9, 1979.

Filed Dec. 5, 1979.

Petition for Allowance of Appeal Denied June 18, 1980.

Sally Frick, Pittsburgh, for appellant.

Susan Ruffner, Assistant District Attorney, Pittsburgh, for appellee.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.

CERCONE, President Judge:

The instant appeal arises from the refusal of the lower court to dismiss appellants' indictments which led to appellants' trial a third time on the charges of illegal possession and possession with intent to deliver a controlled substance, heroin.[1] Appellants claim the third trial will offend against their constitutional right not to be twice placed in jeopardy.

1. Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780–113(a)(16), –113(a)(30) (1977).

We disagree and will affirm the order of the court below. The relevant facts are as follows.

On January 5, 1977, five Pittsburgh Police Officers executed a search warrant for a residence in the City of Pittsburgh, and arrested appellants, Lionel and Maxine Walls. When the police forcibly entered the residence, stipulated to be that of Maxine Walls, they observed Lionel Walls withdrawing his arm from a hallway closet. The police removed a leather coat from the closet, and a plastic bag containing seventeen foil packets fell to the floor.[2] On the closet shelf a .25 calibre automatic pistol was discovered.[3] Also seized as a result of the warrant and the arrests were a police scanner tuned to monitor police channels, $119.00 in cash, and some documents tending to establish Lionel's residence.

During the development of the Commonwealth's case in chief at the Walls' first trial, which proceeded before a judge sitting without a jury, the Commonwealth sought to introduce the pistol into evidence against them. The Commonwealth's theory was that those who deal in narcotics usually own firearms for protection, and that ownership of the pistol, therefore, was some evidence of conscious dominion and control of the heroin. See *Commonwealth v. Santiago*, 462 Pa. 216, 340 A.2d 440 (1975); *Commonwealth v. Harris*, 241 Pa.Super. 7, 359 A.2d 407 (1976). (The police scanner was to be offered into evidence on a similar ground.) Defense counsel promptly objected and moved for a mistrial. After lengthy argument on the point, the trial judge granted the mistrial motion despite the fact that the case was being tried without a jury.

The Walls' second trial also commenced before a judge sitting without a jury. Apprised of the general nature of

2. Lionel Walls had more heroin-filled packets on his person and, his effort to discard them unnoticed was foiled by the police.

3. Although a violation of the Firearms Act was also charged initially, this charge was "nol prossed," presumably because possession of a firearm in one's residence is not a crime. See Pennsylvania Uniform Firearms Act, 18 Pa.C.S. § 6106 (1973).

the problem which arose concerning the pistol at the first trial, the trial judge conducted a pre-trial conference with counsel. Although the problem of prejudicial evidence in a non-jury trial was discussed in the abstract, the precise nature of the objectionable evidence was not mentioned. Realizing the futility of seeking a definitive ruling from such a general discussion, the Commonwealth suggested that the trial judge review and rule upon the admissibility of the particular evidence prior to beginning the trial. However, counsel for Lionel Walls objected, and the trial judge refused to rule on the admissibility of the evidence until trial, indicating instead only that his judicial philosophy was substantially similar to that of the previous trial judge. Consequently, the Commonwealth's second witness again testified to the discovery and seizure of the pistol in the closet, and defense counsel again moved for a mistrial. Unfortunately, the mistrial motion was granted once more. After appellants' subsequent motion to dismiss the indictments was denied, they perfected this appeal.

On this appeal, it is the position of appellants that the Commonwealth knew from the first mistrial that the pistol was highly prejudicial evidence; ergo, its offer of the pistol into evidence at the second trial was tantamount to intentional conduct calculated to provoke a mistrial. In such circumstances, appellants argue, the general rule, that the double jeopardy clause does not bar retrials following mistrials, gives way to the more particular exception that jeopardy will attach when the Commonwealth has engaged in conduct intended to provoke a mistrial. Compare *United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) with *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), and *Commonwealth v. Potter*, 478 Pa. 251, 386 A.2d 918 (1978).

In rebuttal, the Commonwealth argues that both previous trial judges erred in granting mistrials when the pistol was proffered as evidence—at most the judges should have refused to admit it into evidence. That being the case, the Commonwealth contends, its conduct in offering the pistol

as evidence could not have been calculated to produce a mistrial, because the mistrial motions should not have been granted.

At the heart of the instant controversy is the proper interpretation of our decision in *Commonwealth v. Conti*, 236 Pa.Super. 488, 345 A.2d 238 (1975) in which we discussed in depth the proposition that some kinds of evidence offered at trial are so inflammatory and prejudicial that even trial judges, despite their training and cultivated probity, may be pushed beyond the pale of objectivity and unable to render a just decision on the evidence properly before them. Appellants argue that the pistol was one such kind of inflammatory and prejudicial evidence, and that following the first aborted trial, the Commonwealth knew it to be such. We disagree.

The linchpin of appellants' double jeopardy claim, *Commonwealth v. Conti*, supra, involved a witness' testimony at a non-jury trial to the effect that the defendant had attempted to plead guilty to the crime charged at the preliminary hearing. Evidence of the attempted plea was inadmissible because the defendant had not been represented by counsel at the preliminary hearing. Although the trial judge sustained defense counsel's objection to this testimony, he refused to grant the mistrial motion. On appeal we reversed. The analysis in *Conti* compared cases such as *Commonwealth v. Mangan*, 220 Pa.Super. 54, 281 A.2d 666 (1971) and *Commonwealth v. Berkery*, 200 Pa.Super. 626, 190 A.2d 572 (1963), *alloc. denied*, 202 Pa.Super. XXX, *cert. denied*, 375 U.S. 966, 84 S.Ct. 484, 11 L.Ed.2d 415 (1964), where we found the trial judge not to have abused his discretion in denying a mistrial motion when potentially prejudicial evidence was offered, with cases such as *Commonwealth v. Rivers*, 218 Pa.Super. 184, 279 A.2d 766 (1971), where we reached contrary result. From those cases, in *Conti* we deduced two factors which will be weighty considerations in determining whether a mistrial should be declared in a non-jury trial. The first factor is whether the evidence is "so prejudicial" that the risk of improper adjudi-

cation cannot be ignored; such evidence is usually recognizable by its emotional impact rather than its misleading probative value. The second factor is whether the prejudicial evidence is important to the case; that is to say, when the other evidence of guilt is overwhelming, "we shall be less sensitive to the risk of harmful prejudice . . .." *Id.* 236 Pa.Super. at 501, 345 A.2d at 245. Because in *Conti* the proffered evidence was highly prejudicial, an uncounselled confession, and the Commonwealth's case was not overwhelming, the crux being the credibility of its witnesses, we concluded the mistrial motion was erroneously denied.

*Conti*, however, should not be construed as having abrogated the general rule that trial judges, given their legal training and experience, will not be swayed by their emotions and will reach the proper conclusion based upon the evidence. *Conti*, and *Commonwealth v. Rivers*, supra, before it, merely recognized that there are exceptional situations where this presumption of impartiality should not be indulged. Generally speaking, as we recognized in *Conti*:

> "Judges, however, by virtue of their legal training and professional experience can be expected to sift through the evidence, critically analyze it, and discard that which is not properly presented. As a result, an appellate court can more readily presume proper decision making when the trier of fact is a judge."

Consequently, the cases in which we have found a trial judge to abuse his discretion in not granting a mistrial have involved the most highly prejudicial kinds of evidence. See *Commonwealth v. Badger*, 482 Pa. 240, 393 A.2d 642 (1978) (trial judge presided at hearing during which defendant tendered, then withdrew, guilty plea); *Commonwealth v. Jones*, 259 Pa.Super. 103, 393 A.2d 737 (1978) (trial judge heard direct evidence of prior conviction for same crime); and, *Commonwealth v. Rivers*, supra, (trial judge heard direct evidence of prior crimes, including pending murder charge).[4]

4. *Cf. Commonwealth v. Lockhart*, 227 Pa.Super. 503, 322 A.2d 707 (1974) where the view was volunteered in dictum that showing the

On the other hand, the cases also demonstrate not every kind of prejudicial matter which comes to the attention of a trial judge will require that he grant a mistrial motion, even if such evidence would have required a mistrial had it come to the attention of a jury as the finder of fact. See *Commonwealth v. Biancone,* 249 Pa.Super. 34, 375 A.2d 743 (1977) (insinuation of prior, unrelated criminal activity),[5] *Commonwealth v. Walls,* 261 Pa.Super. 321, 325 n.2, 396 A.2d 419, 421 n.2 (1978) (indication of suppressed statements, although nature of statements not revealed); *Commonwealth v. Neal,* 258 Pa.Super. 375, 392 A.2d 841 (1978) (appearance of accused in prison garb).

■ In the instant case the attempt to admit the pistol into evidence carried far less potential for prejudice than those instances in which we found a mistrial mandatory. While it may be said that the pistol could be excluded from evidence because its prejudicial impact outweighed its modest probative value, it does not follow that a mistrial should have been declared. As we stated in *Commonwealth v. Lee,* 262 Pa.Super. 280, 291, 396 A.2d 755, 760 (1978):

> "It appears . . . that the crucial consideration is the type of evidence the judge hears; if the evidence is inadmissible and is of a highly prejudicial nature, the judge should recuse himself or declare a mistrial if it is too late for recusal . . . A guilty plea is by its nature so prejudicial that recusal is required. . . . *If the evidence is admissible or not of a highly prejudicial nature, recusal is not required."* (Citations omitted; emphasis added).

Since the pistol should not have been a sufficient basis for granting a mistrial in the context of a non-jury trial, the Commonwealth's attempt to admit it into evidence cannot be deemed to be that kind of conduct intended to provoke a mistrial. See *Commonwealth v. Potter,* 478 Pa. 251, 386

trial judge police photographs, thereby implying prior criminal offenses, could be the basis for a mistrial.

5. See also *Commonwealth v. Williamson,* 243 Pa.Super. 139, 149–50, 364 A.2d 488 (1976) (Concurring Opinion by Spaeth, J.).

A.2d 918 (1978). Consequently the court was correct in denying appellant's motion to dismiss the indictments based upon the double jeopardy clause.

Order affirmed.

HOFFMAN, J., files a dissenting statement.

HOFFMAN, Judge, dissenting:

I dissent. The first trial in this case served to put the Commonwealth on notice of the likelihood that the evidence in question would provoke a mistrial in any subsequent trial. The Commonwealth was further put on notice of the danger of introducing the pistol when, after it tried unsuccessfully to obtain a ruling on the admissibility of the evidence before the second trial, the trial judge indicated that "his judicial philosophy was substantially similar to that of the previous trial judge." Majority op. at 892. Under these circumstances I conclude that the Commonwealth's persistent attempt to introduce the pistol was intended to provoke a mistrial. Accordingly, I would reverse the order of the lower court on the ground that reprosecution of appellants would violate their constitutional right not to be twice placed in jeopardy.