J-S12028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEXANDER RIVERA | : | |
| | : | |
| Appellant | : | No. 3396 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 5, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005186-2018

BEFORE:  LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 2, 2021**

Appellant Alexander Rivera appeals from the judgment of sentence imposed following his non-jury trial convictions for aggravated assault, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia, possession of an instrument of crime, simple assault, and recklessly endangering another person.[1]  On appeal, he claims that the evidence was insufficient to prove the necessary *mens rea* to sustain a conviction for aggravated assault, challenges the discretionary aspects of his sentence, and contends that the trial court erred when it denied his request for a mistrial for an alleged discovery violation.  We affirm.

On April 8, 2018, Appellant brought a recently purchased revolver with him while driving around Philadelphia with the victim, Anthony Pichardo, and

---

[1] 18 Pa.C.S. §§ 2702(a), 6106(a)(1), 6108, 907(a), 2701(a), and 2705 respectively.

Jonathan Serrano. Serrano was driving the vehicle, an Acura TL, and Pichardo was sitting in the front passenger seat while Appellant was sitting in the rear of the vehicle. After Serrano parked the car, the three were listening to music and smoking marijuana when Appellant pulled the revolver out of the bag slung across his chest. After Serrano told him to "chill, chill," Appellant put the gun away. N.T. Trial, 2/22/19, at 13.

A little while later, Appellant again took the gun out, removed four of the five bullets from the gun, and began spinning the chamber, asking Serrano and Pichardo: "Do y'all want to play?" *Id.* at 13-14. Appellant put the gun away after his associates again asked him to "chill." *Id.* at 15.

Appellant took the gun out a third time and began to point it toward his friends, acting as if he were shooting it. Serrano got scared and left the car. According to Serrano, Appellant and Pichardo remained in the car and Appellant was "still messing around with" the gun. *Id.* at 17; *see also id.* at 22. Serrano testified:

> I was outside the car. I heard a shot. I got scared and I ran back to the door and looked in and [Pichardo] was sliding and [Appellant] was getting out of the back and putting the gun back in [(making a motion toward his waistband).] I said, "Oh my God, you killed him." And he took off running.

*Id.* at 17.

Serrano then drove Pichardo to the hospital where he required immediate life-saving treatment for a gunshot wound to the back of his neck exiting through the pharynx. Although medical personnel were able to save

his life, Pichardo suffers from quadriplegia, respiratory failure, pneumonia, spasticity, and pain. He is ventilator-dependent and requires 24-hour nursing care for all activities of daily living. *Id.* at 59.

The trial court summarized Pichardo's trial testimony as follows:

[At trial,] Pichardo testified as follows. He is eighteen (18) years old. On April 8, 2018, he was sitting in the passenger seat of . . . Serrano's car. Appellant was sitting in the backseat of Serrano's car. Serrano parked his car around Front Street and Wishart Street in Philadelphia, PA. After Serrano parked the car, Appellant revealed he had a gun. [Pichardo testified that Appellant had handed the gun to him, and that he handed it back to Appellant. Pichardo denied trying to take a photograph of himself with the gun or cocking it.] [Pichardo] recalls that the last thing he remembers [from that night] is Appellant saying he wanted to kill [Pichardo] because [Pichardo] was talking to Ashley, a girl Appellant liked. [Pichardo] was subsequently shot in the back of the neck.

Trial Ct. Op., 9/2/20, at 3 (record citation omitted and formatting altered).

At trial, Appellant objected to Pichardo's testimony that Appellant stated he wanted to kill Pichardo, arguing that the Commonwealth should have disclosed the inculpatory statement during discovery. N.T. Trial at 81. The Commonwealth responded that it was the first time they had heard of Appellant's statement, and that they would not be relying on the statement in order to establish Appellant's guilt. *Id.* at 82. Appellant then moved for a mistrial based on the alleged discovery violation. *Id.* The trial court denied Appellant's motion, explaining that it would strike the statement and would not give it any weight in its decision. *Id.* at 82-83.

Additionally, Philadelphia Police Officer Gregory Welsh testified as an expert in firearms analysis, ballistics, and identification. N.T. Trial at 51-52. Officer Welsh opined that the bullet recovered from the vehicle had been fired from a revolver. *Id.* at 54. He explained that a revolver can be fired in single action, in which the shooter pulls back the hammer until it locks and pulls the trigger using approximately three pounds of force to release the hammer. *Id.* at 56. Officer Welsh testified that a person could also fire a revolver in double action, without first pulling back the hammer, by pulling the trigger with twelve to fifteen pounds of force. *Id.*

Appellant also testified at trial, and the trial court summarized his testimony as follows:

> Appellant met Serrano and [Pichardo] approximately seven (7) months prior [to the incident]. On April 8, 2018[,] at approximately four (4) or (5) o'clock in the afternoon, Appellant met up with Serrano and [Pichardo] getting into the backseat of Serrano's Acura TL. Appellant, Serrano, and [Pichardo] planned to hang out, smoke, and order food before Serrano and [Pichardo] went [to] get haircuts. Around eight (8) o'clock, Serrano, [Pichardo], and Appellant headed to Front and Wishart [Streets]. Serrano parked on the side of the Chinese restaurant. Appellant was in the backseat, Serrano was in the driver seat, and [Pichardo] was in the passenger seat.
>
> Appellant had a gun on him in the car. . . . Appellant mentioned that Serrano and [Pichardo] knew Appellant had purchased a gun. Appellant was transporting the gun in a black fanny pack. After getting food from the Chinese restaurant and getting back in Serrano's car, Appellant decided to show [Pichardo] and Serrano the gun. At one point, Appellant gave the gun to [Pichardo] to hold, but before Appellant gave the gun to [Pichardo], he made sure he unloaded it. Once he unloaded the gun, Appellant dumped the bullets in his hand and put them in his left pocket, before passing the gun to [Pichardo]. While holding the gun, [Pichardo]

- 4 -

went to snap a picture. Upon hearing the click of [a] camera, Appellant reached for the gun to warn [Pichardo] about posting a picture with a gun on Instagram to avoid getting into trouble with law enforcement. Appellant reached for the gun and asked for it back. When Appellant reached for the gun, he saw that . . . it was still cocked. When Appellant saw the gun was still cocked, he tried to de-cock the gun, and when Appellant tried to de-cock the gun, the hammer slipped and a shot went off resulting in a bullet discharging into the back of [Pichardo's] neck. [Appellant testified that he was holding the gun in his left hand while he was attempting to de-cock it, and it went off.] After the shot went off, Appellant panicked, put the gun in his waistband, and ran. Appellant ran to the corner, and by the time he could gather his thoughts, Serrano had sped off. Subsequently, Appellant tossed the gun as far as he could over a few houses and discarded the clothes he was wearing.

Appellant stated that he in no way meant to shoot [Pichardo], that [he] and [Pichardo] were not messing with the same girl, that [he] and [Pichardo] did not have any argument up to the gun discharging, and that he never told [Pichardo] he wanted to kill him.

Trial Ct. Op. at 6-7 (record citations omitted and formatting altered).

At the conclusion of the non-jury trial, the trial court found Appellant guilty of the aforementioned charges. On June 5, 2019, the court imposed a sentence of ten to twenty years' imprisonment for aggravated assault and a consecutive sentence of one to two years for carrying a firearm without a license.[2]

Appellant filed a timely post-sentence motion, which was denied by operation of law. Appellant subsequently filed a timely notice of appeal and a

_____

[2] The trial court imposed no further penalty on the possession of an instrument of crime and carrying a firearm on a public street in Philadelphia counts. The trial court also determined that the simple assault and recklessly endangering another person counts merged with the aggravated assault count.

court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues for our review:

1. Did the trial court err in finding sufficient evidence to support the *mens rea* for aggravated assault where the evidence showed only that a gun went off while in [Appellant's] possession and he unintentionally shot [Pichardo], his friend, in a tragic accident?

2. Did the trial court err in imposing an above-guideline sentence where [Appellant] had no prior criminal convictions, demonstrated evidence of the potential for rehabilitation, and had unintentionally caused the serious injuries to [Pichardo]?

3. Should [Appellant] receive a new trial due to a discovery and due process violation where the trial court improperly denied his motion for a mistrial after [Pichardo] testified that [Appellant] made an incriminating statement and the statement had never been provided to the defense prior to trial?

Appellant's Brief at 7 (some formatting altered).[3]

**Sufficiency of the Evidence**

Appellant first challenges the sufficiency of the evidence supporting his aggravated assault conviction. *Id.* at 23-28. Specifically, Appellant argues that the Commonwealth failed to present sufficient evidence to establish the requisite *mens rea*. *Id.* at 23. In support, he claims that there is no evidence

---

[3] In his Rule 1925(b) statement, Appellant raised a claim that the verdict was against the weight of the evidence, but he has not argued that claim in his brief. Therefore, we conclude that he has abandoned that issue on appeal. *See Commonwealth v. Rodgers*, 605 A.2d 1228, 1239 (Pa. Super. 1992) (stating that "[w]e must deem an issue abandoned where it has been identified on appeal but not properly developed in the appellant's brief" (citation omitted)).

of malice, which is a necessary element of aggravated assault. *Id.* Appellant contends that malice is more than ordinary recklessness, rather, "there is a class of wanton and reckless conduct which manifests such an extreme indifference to the value of human life which transcends the negligent killing and reaches to the level of malice." *Id.* at 24-26 (quoting ***Commonwealth v. Hoffman***, 198 A.3d 1112, 1119 (Pa. Super. 2018)).

Appellant argues that while he "acted with gross negligence or ordinary recklessness, he did not mean to kill Pichardo." *Id.* at 26. Specifically, Appellant asserts that he did not consciously point the gun at anyone and pull the trigger, instead he accidentally fired the gun while attempting to de-cock it. *Id.* at 27. Appellant notes that "Pichardo admitted to playing with the gun," and Serrano did not see what happened when the gun went off because he was not in the car at that time. *Id.* Appellant argues that there is no evidence contradicting his testimony that the shooting was accidental. *Id.* Appellant alternatively contends that even if the trial court rejected Appellant's testimony, there is nothing in the record to indicate that Appellant "consciously thought about the risk to [Pichardo] and pulled the trigger anyway[]" and the shooting was not accidental. *Id.*

The Commonwealth responds that the uncontradicted evidence established that Appellant was seated directly behind Pichardo in the car and, because the bullet entered the back of Pichardo's neck and exited through his pharynx, Appellant must have been pointing the gun directly at the back of Pichardo's neck when he shot him. Commonwealth's Brief at 9-10. The

Commonwealth also asserts that the evidence established that Appellant would have had to apply at least three pounds of pressure on the trigger to fire the revolver. *Id.* at 10. Under these circumstances, the Commonwealth argues that the evidence was sufficient for the fact-finder to conclude that Appellant acted with malice when he intentionally and/or recklessly caused serious bodily injury to Pichardo. *Id.* at 10-12.

Our standard of review for addressing the sufficiency of the evidence is well settled:

> Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary. We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the [fact-finder] to find every element of a crime beyond a reasonable doubt.
>
> > In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Soto*, 202 A.3d 80, 93 (Pa. Super. 2018) (citation omitted and formatting altered), *appeal denied*, 207 A.3d 291 (Pa. 2019).

Aggravated assault is defined in the crimes code, in relevant part, as follows:

**§ 2702. Aggravated assault.**

**(a) Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S. § 2702(a)(1).

"Where the victim suffers serious bodily injury, the Commonwealth is not required to prove specific intent." *Commonwealth v. Patrick*, 933 A.2d 1043, 1046 (Pa. Super. 2007) (*en banc*) (citation omitted). Instead, "[t]he Commonwealth need only prove [the defendant] acted recklessly under circumstances manifesting an extreme indifference to the value of human life." *Id.* (citations omitted).

As this Court has stated:

To prevail on a theory of recklessness in a prosecution for aggravated assault, the Commonwealth must show that the assailant's recklessness rose to the level of malice, a crucial element of aggravated assault. The malice that is required for aggravated assault is the same as that required for third degree murder. Malice consists of a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured."

*Commonwealth v. Miller*, 955 A.2d 419, 422 (Pa. Super. 2008) (citation omitted and formatting altered).

- 9 -

Additionally, "malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Commonwealth v. Santos*, 876 A.2d 360, 364 (Pa. 2005) (citation omitted and formatting altered). Malice may be inferred from the use of a deadly weapon on a vital part of the victim's body. *See Commonwealth v. Knox*, 219 A.3d 186, 195 (Pa. Super. 2019); *see also Commonwealth v. Young*, 431 A.2d 230, 232 (Pa. 1981) (concluding that there was sufficient evidence of malice where the defendant aimed a loaded gun at the victim and the gun discharged, regardless of whether gun discharged accidentally or the defendant intended only to scare the victim).

Here, our review of the record confirms that, when viewed in the light most favorable to the Commonwealth as verdict winner, there was sufficient evidence to establish the requisite *mens rea* for aggravated assault. *See Soto*, 202 A.3d at 93. As noted previously, the Commonwealth presented evidence establishing that Appellant shot Pichardo at close range in the back of the neck. This alone supports an inference of malice. *See Young*, 431 A.2d at 232; *Knox*, 219 A.3d at 195. Further, Appellant's conduct on the night in question, which included repeatedly playing with and pointing the loaded revolver at both of his friends before shooting Pichardo, is proof of a hardness of heart and recklessness of consequences that supports a finding of malice. *See Miller*, 955 A.2d at 422. Under these circumstances, we agree with the trial court that the Commonwealth presented sufficient evidence to

prove that Appellant acted with malice when he shot Pichardo. Accordingly, Appellant's first issue merits no relief.

**Discretionary Aspects of Sentence**

In his second issue, Appellant challenges the discretionary aspects of his sentence. He claims that the trial court imposed an unreasonable sentence because the circumstances of this case did not warrant imposing a sentence outside the aggravated guideline range for aggravated assault nor consecutive sentences. Appellant's Brief at 28-29, 32. In support, Appellant explains that he was a first-time adult offender at the time of the incident and that the trial court mischaracterized Appellant's history at Saint Gabriel's, a juvenile placement facility. *Id.* at 29-30. Appellant asserts that he was placed at the facility after he was adjudicated dependent and because was not attending school or residing at his correct address. *Id.* at 30, 32. Appellant concedes that he did incur some disciplinary infractions at the facility, but notes that he completed the program and graduated from high school. *Id.* at 30. Further, Appellant argues the trial court made a number of assumptions about the opportunities provided by the facility, but he does not explain what those assumptions were. *Id.* He also claims that the trial court failed to consider his rehabilitative needs and mitigating factors and instead focused the sentence solely on the injuries suffered by Pichardo. *Id.* at 29.

The Commonwealth responds that when it imposed sentence, the trial court acknowledged the guidelines, but chose to impose a sentence above the aggravated guideline range for aggravated assault and a sentence within the

standard range of the guidelines for carrying a firearm without a license. Commonwealth's Brief at 13-14. The Commonwealth notes that the trial court stated it was tailoring the sentence to the circumstances of the offense and the victim's ongoing injuries. *Id.* at 14. The Commonwealth points out that the court considered a presentence (PSI) report as well as Appellant's mental health investigation. *Id.* at 15. The Commonwealth argues that the trial court considered all of the requisite factors, and just because the court did not give them the weight Appellant would have preferred, did not mean that the court did not consider them. *Id.* at 16-18. Finally, the Commonwealth asserts that the imposition of consecutive sentences was a proper exercise of the court's discretion because a defendant is not entitled to concurrent sentences and Appellant's possession of the firearm made the aggravated assault possible. *Id.* at 16-18.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." ***Commonwealth v. Derry***, 150 A.3d 987, 991 (Pa. Super. 2016) (citation omitted). Rather, before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether [the a]ppellant preserved his issues; (3) whether [the a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the [S]entencing [C]ode.

***Commonwealth v. Corley***, 31 A.3d 293, 296 (Pa. Super. 2011) (citation omitted). "To preserve an attack on the discretionary aspects of sentence, an

appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted).

Here, Appellant timely filed a notice of appeal, preserved his discretionary sentencing claims in a post-sentence motion and his Rule 1925(b) statement, and included a concise statement of reasons for allowance of appeal in his brief. ***See Corley***, 31 A.3d at 296. Moreover, both of Appellant's sentencing claims raise substantial questions for our review. ***See Commonwealth v. Coulverson***, 34 A.3d 135, 143 (Pa. Super. 2011) (finding a substantial question where the appellant argued that the trial court focused solely on the seriousness of the offense and did not consider his rehabilitative needs); ***Commonwealth v. Felmlee***, 828 A.2d 1105, 1107 (Pa. Super. 2003) (*en banc*) (concluding that a substantial question is raised where an appellant alleges the sentencing court imposed a sentence in the aggravated range without adequately considering certain mitigating factors). Therefore, we will review the merits of his claims.

Our well settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

When imposing sentence, the trial court must follow the general principle that sentence should be consistent with "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."  42 Pa.C.S. § 9721(b).  Further, "the trial court is required to consider the particular circumstances of the offense and the character of the defendant[,]" including the defendant's "prior criminal record, age, personal characteristics, and potential for rehabilitation."  ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citations omitted).  A sentencing court may not rely on impermissible considerations such as information from outside the record.  ***See Commonwealth v. Druce***, 796 A.2d 321, 334 (Pa. Super. 2002).  However, a court does not abuse its discretion when it relies on reasonable inferences drawn from the record before it when imposing sentence.  ***See id.*** at 336; ***see also Commonwealth v. Downing***, 990 A.2d 788, 793 (Pa. Super. 2010).

"Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court.  Thus, rather than cabin the exercise of a sentencing court's discretion, the guidelines merely inform the sentencing decision."  ***Commonwealth v. W. Walls***, 926 A.2d 957, 961-62 (Pa. 2007) (citations and footnote omitted).

In every case where a sentencing court imposes a sentence outside of the sentencing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence. *See* 42 Pa.C.S. § 9721(b). This Court has explained:

> [Section 9721] requires a trial judge who intends to sentence a defendant outside of the guidelines to demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.
>
> When evaluating a challenge to the discretionary aspects of sentence it is important to remember that the sentencing guidelines are advisory in nature. If the sentencing court deems it appropriate to sentence outside of the guidelines, it may do so as long as it offers reasons for this determination. [O]ur Supreme Court has indicated that if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable, we must affirm a sentence that falls outside those guidelines.
>
> A sentencing court, therefore, in carrying out its duty to impose an individualized sentence, may depart from the guidelines when it properly identifies a particular factual basis and specific reasons which compelled it to deviate from the guideline range.

*Commonwealth v. Shull*, 148 A.3d 820, 836 (Pa. Super. 2016) (citations omitted and formatting altered). Further, where a PSI exists, "we shall . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Conte*, 198 A.3d

1169, 1177 (Pa. Super. 2018) (citation omitted), *appeal denied*, 206 A.3d 1029 (Pa. 2019).

Here, the trial court sentenced Appellant to ten to twenty years of incarceration for aggravated assault and a consecutive term of one to two years of incarceration for carrying a firearm without a license, resulting in an aggregate sentence of eleven to twenty-two years' incarceration. Before imposing sentence, the court stated:

> All right. I've considered the [PSI], the mental health [report], the sentencing guidelines, the letters I received from both [Appellant's] family as well as from the complainant and his family, what people have testified to today, as well as the facts and circumstances of this case.
>
> Whatever I do here will not in any way change what happened that day. It is the most difficult part of what our justice system is because the consequences to the complainant are self-evident. They've been on the record. I saw it at the trial. But Anthony Pichardo is basically sentenced unfortunately to a life where he cannot use his body. And there's no other way to put it. And I think the family has well spoken of the effect as well as his nurse on what it really means.
>
> And what troubles me about this case is several things. One is, in juvenile court, this interim probation, I think if you complete interim probation, if I'm correct—and counsel can correct me— the case is dismissed or discharged because they don't want people to have juvenile records.
>
> This was a possession with intent to deliver case, and it turned into a simple possession case in order to go into this program. Am I basically correct, counsel, about that?
>
> [Commonwealth]: Yes.
>
> THE COURT: So, there's this opportunity—juvenile court is designed to help people. It's designed completely pretty much for rehabilitation. There's some public safety component. And then

- 16 -

comes Saint Gabriel's which is an excellent place, and which is a place designed to really get young people moving forward.

And it appears [Appellant] took advantage of some things there. He got his GED some [sic] other things. There's also issues of what went on there, and some of the infractions or fights. But then after getting out, and after being provided with a follow-up program through . . . [Universal] Technical Institute. And the purpose of the aftercare for juveniles is to follow up on making sure that whatever progress was made in custody is followed up when the person is out of custody.

There's no real follow up, and I don't think [Appellant] came there that day with the idea that he was going to do this to . . . a friend of his. I don't think that he was thinking about, oh, I'm going to figure out a way to shoot him. But [Appellant] knows what guns are.

It's one thing to point a gun downward and shoot it, which is also very dangerous because bullets fly all over the place, but to point it straight at somebody's back from the back seat of a car to the front seat, I don't know what people think is going to happen.

And unfortunately that's exactly what happened here. I agree with the Commonwealth on the guidelines, because I think the aggravated assault guidelines here in terms of the severity of the injuries and the lifelong consequences and everything that's been said about what happened to the complainant, that the aggravated assault guidelines are not really reflective of that.

So I'm going to go outside the guidelines. And I will say this—and I said it earlier to the complainant's family and to the complainant—whatever I do here is not going to change anything. It's not going to rewind the tape. But I will do what I think is appropriate for both the punishment as well as potential rehabilitation that this happens to nobody else.

\* \* \*

[S]ometimes I agree with the Commonwealth, and sometimes I agree with the defense on sentencing recommendations. And sometimes I go above what the Commonwealth asks for and sometimes below. Same thing with the defense.

But in this case, I think that the Commonwealth's recommendation of 10 to 20 years for the aggravated assault is

appropriate based on what happened, and that this does not call for a guideline sentence.

\*     \*     \*

But as to the 6106 case, based on what I've heard, I'm going to sentence [Appellant] on that case in the guidelines to 1 to 2 years' consecutive for a total of 11 to 22 years.

N.T. Sentencing Hr'g, 6/5/19, at 29-33.

After imposing sentence, the trial court addressed Appellant as follows:

I hope you'll get the tools when you get out because you will get out, and you'll get out when you're a relatively young man, that you will never, never engage in any kind of criminal conduct because of the devastation that your engaging in this conduct caused to the complainant who very well may not be alive when you get out, depending on his medical condition.

I don't give this sentence with any joy, and I don't give this sentence out of vengeance, I give this sentence because I think based on what happened here, and based on the background, and the circumstances of what occurred, an what happened with the opportunities prior to this incident, it is appropriate.

*Id.* at 33-34.

The trial court further explained in its Rule 1925(a) opinion:

When formulating Appellant's sentence, the court took into account the sixteen (16) negative reports Appellant received and the multiple physical altercations Appellant was involved in while he placed at Saint Gabriel's Hall-Mitchell Program after being arrested for a possession with the intent to deliver for crack cocaine and marijuana. Regarding prior attempts to rehabilitate, this [c]ourt considered that after Appellant was released from Saint Gabriel's he got assigned to an excellent trade school, Universal Tech Services, where Appellant failed to adhere to the mandatory attendance, failed to finish the program, and when implored to finish the program, Appellant refused. Additionally, the court contemplated Appellant's admitted history of substance abuse prevalent for his use of marijuana and Percocet. Finally when formulating Appellant's sentence, the court considered that

> Appellant earned his GED, started a family with his wife . . . has a newborn baby at home, and was working two jobs, up until his arrest, to try to provide for his family.
>
> *        *        *
>
> The sentence was given after careful consideration of all appropriate factors including, most importantly, the safety and well-being of the community, as well as the severity of the offense and the impact on the Complainant who was only eighteen (18) years old when he was shot by Appellant and sentenced to a life confined in bed and dependent on family members and nurses. In the instant case, this [c]ourt found the sentence to be reasonable given the nature of the crimes committed as well as the factors set forth previously, including [A]ppellant's failed attempts at rehabilitation and his being a danger to the community.

Trial Ct. Op. at 14-15.

Based on our review of the record, we discern no abuse of discretion by the trial court. *See Raven*, 97 A.3d at 1253. Because the trial court reviewed a PSI report, we presume that the trial court was aware of Appellant's character and weighed those considerations along with other mitigating factors. *See Conte*, 198 A.3d at 1177. Further, the record confirms that the trial court stated the sentencing guidelines applicable to each offense, considered the Section 9721(b) factors, and provided a statement of the reasons it relied on when imposing a sentence for aggravated assault that exceeded the aggravated guideline range. *See Shull*, 148 A.3d at 836. The trial court did not focus solely on the severity of the victim's injuries when fashioning Appellant's sentence, nor did the trial court make inappropriate assumptions when it concluded that past rehabilitation attempts were unsuccessful. To the contrary, our review of the record indicates that the trial

court made reasonable inferences from the evidence in the record.  *See Druce*, 796 A.2d at 336; *Downing*, 990 A.2d at 793.  Therefore, because the trial court considered the appropriate sentencing factors and set forth its reasons for deviating from the sentencing guidelines, Appellant is not entitled to relief.  *See Shull*, 148 A.3d at 836; *Raven*, 97 A.3d at 1253.

**Request for Mistrial**

In his final issue, Appellant claims that the trial court erred when it denied his request for a mistrial.  Appellant's Brief at 32-36.  He argues that he was entitled to a mistrial because he was "completely ambushed at trial" by Pichardo's testimony that Appellant said he wanted to kill Pichardo because Pichardo had been talking to a girl whom Appellant liked.  *Id.* at 32, 35. Appellant contends that the Commonwealth was required to produce this inculpatory statement as part of discovery, and disputes that the Commonwealth's claim that it was not aware of the statement prior to trial. *Id.* at 35.  Alternatively, he claims that even if the Commonwealth did not know about the statement, the trial court should have granted his request for a mistrial on due process grounds because the statement was so unfairly prejudicial.  *Id.* at 36.

In response, the Commonwealth claims that it was unaware that Appellant had made the statement or that Pichardo would be offering testimony regarding it.  Commonwealth's Brief at 18-19.  The Commonwealth further alleges that the statement was stricken from the record at trial and not considered by the trial court as finder of fact.  *Id.* at 18, 20.  Therefore,

it argues that the trial court did not abuse its discretion in denying the motion for mistrial. *Id.* at 20-21.

This Court has explained:

> If a discovery violation occurs, the court may grant a trial continuance or prohibit the introduction of the evidence or may enter any order it deems just under the circumstances. Pa.R.Crim.P. 573(E) . . . . The trial court has broad discretion in choosing the appropriate remedy for a discovery violation. Our scope of review is whether the court abused its discretion in not excluding evidence pursuant to Rule 573(E). A defendant seeking relief from a discovery violation must demonstrate prejudice. A violation of discovery does not automatically entitle [the defendant] to a new trial. Rather, [a defendant] must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure.

*Commonwealth v. Brown*, 200 A.3d 986, 993 (Pa. Super. 2018) (some citations omitted and formatting altered); *see also Commonwealth v. Ligons*, 773 A.2d 1231, 1237 (Pa. 2001) (stating that "the trial court is accorded broad discretion in fashioning a remedy [for a Commonwealth discovery violation], with a mistrial warranted only when the violation is of such nature as to deprive the defendant of a fair trial" (citation omitted)).

There are two factors that a court must weigh in determining whether a mistrial should be declared in non-jury trials: (1) whether the evidence is so prejudicial as to create a risk of improper adjudication; and (2) whether the evidence is important to the case. *See Commonwealth v. L. Walls*, 415 A.2d 890, 893 (Pa. Super. 1979). "[W]hen the other evidence of guilt is overwhelming, we shall be less sensitive to the risk of harmful prejudice . . .

." **Id.** (formatting altered). Furthermore, "it is presumed that a trial court, sitting as fact-finder, can and will disregard prejudicial evidence." **Commonwealth v. Fears**, 86 A.3d 795, 819 (Pa. 2014) (citation omitted and formatting altered).

Here, the trial court explained that because it disregarded the challenged statement, it was irrelevant to the trial court's determination of guilt, and therefore, the trial court properly denied Appellant's motion for a mistrial. **See** Trial Ct. Op. at 16-17.

Upon review, we conclude that the trial court did not abuse its discretion when it struck Pichardo's statement and denied Appellant's request for a mistrial. **See Brown**, 200 A.3d at 993; **Ligons**, 773 A.2d at 1237. Furthermore, in this case, the trial court sat as the fact-finder, and we presume it disregarded prejudicial evidence. **See Fears**, 86 A.3d at 819. Accordingly, we agree with the trial court that the statement, which was stricken, was irrelevant to the court's finding of guilt, and that a mistrial was not appropriate.[4] **See L. Walls**, 415 A.2d at 893. Accordingly, Appellant's third issue does not merit relief.

Judgment of sentence affirmed.

---

[4] Even if the trial court had considered Pichardo's statement about what Appellant said before Appellant shot Pichardo, we find that the statement was not so prejudicial as to risk an improper adjudication.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/2/2021